UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>    v.<br><br>JOSEPH JEFFEREY BRICE,<br><br>        Defendant. | NO. CR-11-0075-LRS<br><br>**ORDER RE JANUARY 11, 2012 PRETRIAL CONFERENCE** |

On January 11, 2012 a suppression hearing was held in Spokane, Washington to consider the following motions: Defendant's Motion to Suppress Statements (ECF No. 86; ECF No. 158[1]); Defendant's Motion to Dismiss for Outrageous Government Conduct (ECF No. 80); Defendant's Motion to Dismiss Count 3 (ECF No. 91; ECF No. 160[2]); and Defendant's Motion for Bill of Particulars (ECF No. 108; ECF No. 164[3]). The Court placed all motions under advisement. Assistant United States Attorney Russell Smoot appeared on behalf of the Government; Matthew Campbell appeared on behalf of Defendant Brice.

---

[1] This document is the equivalent, redacted version.

[2] This document is the equivalent, redacted version.

[3] This document is the equivalent, redacted version.

ORDER - 1

At the hearing, the court considered testimonial evidence from two government witnesses: Special Agent (SA) Frank Harrill and SA Leland McEuen. Defendant did not testify.

**BRIEF BACKGROUND**

On May 3, 2011, the Defendant, Joseph Jefferey Brice, was charged by Indictment with one count of manufacturing an unregistered firearm (destructive device), in violation of 26 U.S.C. § 5861(f). See ECF No. 1. On May 9, 2011, the Defendant was arrested on an outstanding warrant that had been issued pursuant to the Indictment. On June 21, 2011, the Government filed a Superseding Indictment (ECF No. 31), adding Count 2, Distribution of Information Relating to Explosives, Destructive Devices and Weapons of Mass Destruction pursuant to 18 U.S.C. §§842(p)(2) and 844(a)(2), and Count 3, Attempt to Provide Material Support to Terrorists pursuant to 18 U.S.C. §§2339A(a), (b)(1-3).

**ANALYSIS**

**A.   Defendant's Motion to Suppress Statements**

Defendant moves to suppress the statements taken from him on May 9, 2011, as allegedly violative of his Sixth Amendment constitutional rights. Specifically, Defendant moves to suppress all statements, including but not limited to the "timeline" prepared during his interview; initialed photographs and documents related to the "Zion Job;" and the fruits of the "consent searches", as that consent, according to Defendant, was secured as part of the unconstitutional "interrogation."

ORDER - 2

The Court found that the agents' testimony was credible and consistent.[4] The evidence indicated Defendant was arrested on May 9, 2011. Early that morning (approximately 6:15 a.m.), and just out of bed, Brice was transported from his residence in Clarkston, Washington to the Clarkston Police Station, for an interview. On the way to the agent's vehicle, the Defendant attempted to talk to the agents. SA McEuen activated a hand-held recording device, placed in plain sight, to avoid any misunderstandings. SA McEuen and SA Harrill told the Defendant of the charge and that they wanted to explain the circumstances before the Defendant continued in his insistence to talk to the agents. While in the back of SA Harrill's vehicle, and prior to any questions, Brice was shown copies of four warrants so he could read them. The agents testified Brice was observed reading the warrants and was very talkative and excited. Although the Defendant appeared eager to talk, the agents testified that they worked hard to slow the Defendant down until they could advise him of the charges and his Miranda warnings.

Once at the police station, at approximately 6:16 a.m., Brice was given Miranda warnings, and provided with an FD-395 Advice of Rights Form. Brice appeared to read the form (eyes moving across the form) and signed the form at 6:19 a.m. At the beginning of the interview, Brice was verbally advised what he was being arrested for, and Brice raised questions that would indicate he had read and comprehended what he was

---

[4]The Special Agents were excluded from the court room during each other's testimony.

ORDER - 3

reading and what he was told. For instance, Defendant verbalized his understanding of the present charge against him:

> "Manufacturing, uh, uh, manufacturing an unregistered firearm which is just the new, until they make the new thing for explosives, that's what it is."

ECF No. 93-3, at 6.

Defendant Brice also volunteered a comment that he thought he was being charged with the same offense that had been charged against Kevin Harpham.[5]

| | |
|---|---|
| Defendant: | I am not Kevin Harpham. I am not anything like that. |
| Agent: | We understand that. |
| Defendant: | I have never, I don't hurt people, I don't wanna hurt people. |

ECF No. 93-3, at 10.

The testimony indicated that the Defendant understood his rights and voluntarily signed the waiver of rights form in the presence of Special Agents Harrill and McEuen. Before getting to the substance of the charge in the original Indictment and the Defendant's other uncharged (at the time) criminal activity, the agents advised Defendant that he could end the conversation "whenever [he] want[ed]" and that he could "choose not to answer questions." See ECF No. 93-3, at 10. Ultimately, despite the Defendant's eagerness to talk to the agents, the Defendant was not asked about the events relevant to Count One of the subsequent Superseding Indictment until well into the interview process – after being advised

---

[5]At the time, Harpham was charged in the well-publicized Martin Luther King Day Parade attempted bombing.

ORDER - 4

of the pending charge in the original Indictment and executing an FBI Advice of Rights form. See ECF Nos. 93-3, 93-4. The interview continued for approximately four hours and was recorded in its entirety.

"The Sixth Amendment guarantees a criminal defendant 'the right ... to have the Assistance of Counsel for his defense.'" *United States v. Harrison*, 213 F.3d 1206, 1209 (9th Cir. 2000) *(quoting* U.S. Const. amend. VI.). The Supreme Court has held that the Sixth Amendment right to counsel attaches "at or after the initiation of adversary judicial criminal proceedings—whether by way of formal charge, preliminary hearing, indictment, information, or arraignment." *Kirby v. Illinois*, 406 U.S. 682, 689 (1972) (plurality opinion); *see also United States v. Karr*, 742 F.2d 493, 495 (9th Cir. 1984) (*citing United States v. Gouveia*, 467 U.S. 180, 104 S.Ct. 2292, 2296 (1984)). The Ninth Circuit noted, however, that "attachment of the right alone does not guarantee a defendant the assistance of counsel." *Harrison*, 213 F.3d at 1209. "A defendant also must invoke the Sixth Amendment right by hiring a lawyer or asking for appointed counsel." *Id*.

Defendant asserts that despite the fact that he was advised of the fact that formal judicial proceedings had begun against him in the form of being charged with a federal offense, signing a rights waiver, and being advised that he would be going in front of the federal Magistrate Judge, Defendant asserts that his "confession" was obtained in violation of the Sixth Amendment.

ORDER - 5

The testimony indicates that Defendant asked if he could contact some people. More specifically, Brice mentioned two people: his father and girlfriend. Brice indicated his father would be waiting for him [Defendant] to ride to work at 8:00 a.m. Brice also mentioned his girlfriend as someone for him to contact, but quickly changed his mind stating that he didn't want her to know or be contacted at her work as she didn't know anything and Brice suggested she might be upset with him. Despite being advised of his right to counsel before the questioning, Brice appears to have validly waived the presence of counsel by failing to request assistance of counsel.

In this case, the Defendant was advised of the pending charge and subsequently executed an FBI Advise of Rights form, prior to the post-arrest interview. Defendant was also told that he could end the interview at any time. At the time, Brice eagerly responded to agent-initiated custodial interrogation after he had been advised of his rights. Defendant now seeks to suppress the result of his eagerness and candor. Neither the facts nor the law support Defendant's attempt to use the Sixth Amendment to retract his statements to the agents.

As for which statements/counts are relevant to this motion, the Court finds that at the time of the interview, the only charged conduct was the allegation of manufacturing an unregistered firearm, (destructive device), in violation of 26 U.S.C. § 5861(f). Consequently, the Sixth Amendment waiver analysis applies only to statements that were relevant to the initial Indictment. All other statements relevant to Counts Two

ORDER - 6

and Three of the Superseding Indictment would remain under the Fifth Amendment waiver analysis. In this case, Defendant was advised of the pending charge in the initial Indictment and advised of his Miranda warnings. The Court respectfully denies Defendant's Motion to Suppress his post-arrest statements.

**B.   Defendant's Motion to Dismiss for Outrageous Government Conduct**

Defendant seeks dismissal of Counts 2 and 3 of the Superseding Indictment. Defense argues outrageous government conduct by, in effect, creating a criminal conspiracy and inviting Brice to join it, for the sole purpose of then charging him for doing that which the government asked. Defendant asserts that there was "no existing criminal activity known by the agents." See ECF No. 80, at 33. Defendant also states that there was no existing organization for which to infiltrate. See ECF No. 80, at 35.

The United States responds that "[i]n order to show outrageous government conduct, defendants must show conduct that violates due process in such a way that it is 'so grossly shocking and so outrageous as to violate the universal sense of justice.'" *U.S. v. Stinson*, 647 F.3d 1196, 1209 (9th Cir. 2011) (*quoting U.S. v. Restrepo*, 930 F.2d 705, 712 (9th Cir. 1991) (*quoting U.S. v. O'Connor*, 737 F.2d 814, 817 (9th Cir. 1984)) (internal quotation marks omitted).

The United States argues that here, Defendant was already involved in a continuing series of similar crimes, or the charged criminal enterprise was already in process at the time the government agent became

ORDER - 7

involved. Second, the agent's participation was not necessary to enable Defendant to continue the criminal activity. Third, the agent used artifice and stratagem to ferret out criminal activity. The Ninth Circuit case law indicates that although a defendant may have been "lured" by the government into becoming involved with an undercover operation does not itself make the government's conduct outrageous. See *U.S. v. Garza-Juarez*, 992 F.2d 896 (9th Cir.1993).

The government indicates there is evidence that Defendant discussed unlawful activities with people other than the agent(s).[6] The Court finds no evidence that the investigative techniques employed by the government were outrageous as Defendant suggests. The Court concludes that the evidence arguably supports a showing of predisposition to commit the crimes charged (Counts Two and Three of the Superseding Indictment), and therefore the evidence that a government agent(s) solicited, requested or approached Defendant to engage in criminal conduct, standing alone, is insufficient to constitute inducement. Finally, the current record is devoid of evidence which would tend to show reluctance on the part of Defendant to participate in the criminal activity he is charged with or that he was resistant to the government's purported solicitation.

---

[6]The government represents there is evidence that Defendant discussed bank robbery plans with an associate, discussed robbing a FedEx delivery truck with an associate, discussed bombing the Spokane Federal Building with an associate, and constructed and detonated homemade bombs with others.

ORDER - 8

Defendant's Motion to Dismiss For Outrageous Government Conduct is respectfully denied.

**C.   Defendant's Motion For Bill of Particulars**

Defendant moves for a Bill of Particulars in regard to Counts Two and Three of the Superceding Indictment.  Defendant asserts that those Counts fail to provide sufficient notice of the crime charged and fail to inform him of the nature and cause of the accusation(s) against him. Defendant suggests that it is unclear whether the government deems a single email or web post constitutes a charged offense, or whether it is the entire body of communication(s).  Defendant also argues the time frame of Count Three spans almost six months- December 21, 2010 to May 8, 2011.  Defendant argues the charge does not clarify when during this six month period the offense allegedly occurred.  Defendant notes the government has produced thousands upon thousands of pages of documents, many of which display email and internet activity.  Count Three, Defendant argues, does not clarify whether it considers the breadth of the activity to constitute a single attempt, whether each act would constitute a separate attempt, or whether there was a single attempt made at some unspecified point during that time frame.

The government opposes this motion asserting that the Superseding Indictment provides a "plain, concise, and definite written statement of the essential facts constituting the offense[s] charged," pursuant to Fed. R. Crim. P. 7(c).  Furthermore, the government states it has provided significant discovery, including search warrant affidavits, law

ORDER - 9

enforcement reports, and transcripts of grand jury testimony. Therefore, the purpose served by a bill of particulars has been served and the government requests this Court to deny Defendant's motion for a bill of particulars for Counts Two and Three.

The bill of particulars has three functions: "to inform the defendant of the nature of the charge against him with sufficient precision to enable him to prepare for trial, to avoid or minimize the danger of surprise at the time of trial, and to enable him to plead his acquittal or conviction in bar of another prosecution for the same offense when the indictment itself is too vague, and indefinite for such purposes." *United States v. Birmley*, 529 F.2d 103, 108 (6th Cir. 1976). *Accord, United States v. Andrino*, 501 F.2d 1373, 1378 (9th Cir. 1974); *Yeargain v. United States*, 314 F.2d 881, 882 (9th Cir. 1963). The denial of a motion for a bill of particulars is within the discretion of the district court; its decision will not be disturbed absent an abuse of this discretion. *United States v. Clay*, 476 F.2d 1211, 1215 (9th Cir. 1973).

First of all, the Court finds that Count 2 of the Superceding Indictment meets the requirements of Fed. R. Crim. P. 7(c) and is sufficiently detailed and properly alleges the government's theory such that Defendant can prepare an adequate defense. Count Three, however, is more problematic given the sheer volume of discovery that has purportedly been provided, which Defendant indicates results in less

clarity as to what the indictment charges, and given the Defendant's recent motion to compel discovery.

Full discovery obviates the need for a bill of particulars. *See U.S. v. Giese*, 597 F.2d 1170, 1180 (9th Cir. 1979). After the hearing on the instant motions, Defendant filed a Motion to Compel, ECF No. 147, on January 19, 2012.[7] Thus, the Court tentatively finds that the Motion for Bill of Particulars should be denied without prejudice, with respect to Count Three only. Once there has been provided full and complete discovery to Defendant, he may revisit his motion for a Bill of Particulars as to Count Three only, if from the indictment and the government evidence which he receives, Defendant has not learned enough of the charges against him to prepare for trial and to avoid surprise at trial.

**D.  Motion to Dismiss Count Three of Superceding Indictment**

Defendant argues Count Three is an attempt charge and alleges that an attempt was made but not completed. Defendant theorizes that since the charge does not involve a completed offense, it is difficult to gauge when the government alleges that the attempt was made. Defendant concludes that elements of the offense charged do not fairly inform him

---

[7] Defendant moves the Court for an order directing the United States to provide Mr. Brice with all discovery relating to the "tip" referenced in affidavits submitted by Agent Leland McEuen and certifications submitted by Assistant United States Attorney Russell Smoot.

ORDER - 11

of the charge against which he must defend nor enable him to plead an acquittal or conviction in bar of future prosecutions for the same offense.

The government disagrees and states Count Three of the Superseding Indictment fully comports with Fed. R. Crim. P. 7(c)(1), provides sufficient notice of the elements of the offense in a manner that fairly informs Defendant of the charge against him, and enables him to plead an acquittal or conviction in bar of future prosecutions.

The Court finds that based on its ruling above denying without prejudice Defendant's Motion for Bill of Particulars as to Count Three only, this motion must be denied as well.

**IT IS HEREBY ORDERED:**

1. Another pretrial conference is **SET** for **January 31, 2012 at 8:30 a.m. in Spokane, Washington**. At this hearing, the parties should be prepared to argue any remaining pending motions.

2. Defendant's Motion to Suppress Statements, **ECF Nos. 86, 158**, are **DENIED.**

3. Defendant's Motion to Dismiss for Outrageous Government Conduct, **ECF No. 80**, is **DENIED.**

4. Defendant's Motion to Dismiss Count Three, **ECF Nos. 91, 160** are **DENIED.**

5. Defendant's Motion for Bill of Particulars, **ECF Nos. 108, 164** are **DENIED** with respect to Count Two of the Superceding Indictment and

ORDER - 12

**DENIED without prejudice** with respect to Count Three of the Superceding Indictment.

**IT IS SO ORDERED.** The District Court Executive is directed to enter this order and to provide copies to all counsel, the U.S. Probation Office, and the U.S. Marshal.

**DATED** this  24th  day of January, 2012.

*s/Lonny R. Suko*
_____
LONNY R. SUKO
United States District Judge

ORDER - 13