1

                    IN THE UNITED STATES DISTRICT COURT
                 IN AND FOR THE EASTERN DISTRICT OF WASHINGTON


    ---------------------------------
                                      )
    UNITED STATES OF AMERICA,         )
                                      )
                        Plaintiff,    )   NO. CR-11-75-LRS
                                      )
        -vs-                          )
                                      )
    JOSEPH JEFFEREY BRICE,            )
                                      )   May 22, 2012
                        Defendant.    )   Telephonic Hearing
                                      )
    ---------------------------------

                    VERBATIM REPORT OF PROCEEDINGS
                            MOTION HEARING

                BEFORE THE HONORABLE LONNY R. SUKO
                    UNITED STATES DISTRICT JUDGE

    APPEARANCES:

    FOR THE PLAINTIFF:          RUSSELL E. SMOOT
                                Assistant U.S. Attorney
                                P. O. Box 1494
                                Spokane, WA 99210

    FOR THE DEFENDANT:          MATTHEW CAMPBELL
                                Attorney at Law
                                10 N. Post St., #700
                                Spokane, WA 99201


    REPORTED BY:                Lynette Walters, RPR, CRR, CCR
                                Official Court Reporter
                                P. O. Box 845
                                Yakima, WA 98907
                                CCR No. 2230

    THE DEFENDANT WAS NOT PRESENT


    Proceedings recorded by mechanical stenography; transcript
    produced by computer-aided transcription.

2

1        (MAY 22, 2012, 3:01 P.M.)
2              THE COURT:  Good afternoon.  This is Lonny Suko.  I'll
3    have the court clerk call the case.
4              THE CLERK:  The matter now before the court is
5    United States of America versus Joseph Jefferey Brice, Case
6    No. CR-11-75-LRS-1.
7              THE COURT:  We're here on a motion which was filed by
8    Mr. Campbell.  I have read, after returning from lunch, the
9    material that has been provided; specifically, Documents 265 and
10   266, and I have just read, as I walked on the bench, Document
11   269, consisting of approximately four pages, setting forth the
12   fact pattern or the facts as summarized by Mr. Smoot.
13             Mr. Campbell, the floor is yours.  I assume you've
14   read these materials?
15             MR. CAMPBELL:  I did, Your Honor.  And I did want to
16   clarify one point.  The government did mention in Footnote 1,
17   and actually in it's motion, that the search was actually
18   conducted on May 18.  And I just learned of that.  I had a
19   slightly longer call with my client.  I just learned of that
20   moments before.
21             Apparently the search did occur on the 18th, and at
22   that time Mr. Brice asked if he could contact me.  The jail told
23   him that he -- that would happen at some later point.  He's been
24   locked down since then, so he only talked to me on phone today.
25             But I would agree with the government that, in fact,

1   the search did occur on the 18th. I just learned of it today
2   because Mr. Brice has been locked down since that time.
3        I have read the government's response. And it seems
4   to me that the difficulty posed here is that essentially we have
5   various members, largely of the executive branch, making
6   determinations as to what's attorney-client privilege. With all
7   due respect - and I mean that sincerely - I don't think that a
8   deputy marshal is necessarily the person who should be looking
9   at materials to determine if they're privileged. I don't think
10  that an FBI agent is the person who should be looking at
11  materials to determine if they're privileged. If the search was
12  to occur at all - and I still have no idea why or what the basis
13  for it is - it seems to me that the appropriate procedure would
14  have been to contact the court, get some direction from the
15  court, perhaps have a special master appointed to separate the
16  materials. They could have been submitted to the court up front
17  rather than doing it this way, where now -- only now, after I
18  found out about it and have taken emergency steps, does it seem
19  like there was any real safety measures being instituted. This
20  seems highly improper to me, and I don't think that the
21  procedures outlined really address the concern of protecting
22  attorney-client privilege.
23       At the very least, I would request some explanation as
24  to what the basis for this is. And I do think that all
25  documents need to be turned over to the court for the court's

1  review.  I would request that the documents be turned over to
2  me.  If they're in my client's possession, I should at least be
3  able to know what it is that we're talking about.  At this point
4  it's almost impossible for me to adequately represent my client
5  when I don't even know, really, what materials we're talking
6  about.
7              THE COURT:  Well, I am assuming - and maybe this is an
8  inappropriate assumption - I assume that your client would have
9  discussed with you what documents were picked up?
10             MR. CAMPBELL:  Well, in general terms, that's correct,
11 Your Honor.  In specific terms, I don't know that -- this case
12 has been ongoing for some time.  Mr. Brice has a fair amount of
13 documents.  At this point it's not -- he was only, also, just
14 recently returned to his original cell.  So I don't think at
15 this point I have a full inventory of what may or may not have
16 been taken, simply because he hasn't been able to figure that
17 out yet either.  There's a fair amount of materials that he had.
18 So while we're working on putting that information together, at
19 this moment I don't have a full accounting.
20             THE COURT:  Mr. Smoot, what can you tell us about this
21 case?
22             MR. SMOOT:  I guess that at this point, Your Honor, I
23 would simply like to provide everything that even I have not
24 seen to the court in camera for review, first, to make a
25 determination in -- I guess in the context of Mr. Campbell's

1  concern about whether -- who is able to determine what appears
2  to be attorney-client privileged material.  The best --
3  ultimately the best arbiter of that is the court.
4           I will provide that information and provide, as I
5  noted, relevant reports for the court's review in camera.  If
6  the court has any concern at that point, after review, then I
7  would be more than happy to address any concerns that the court
8  has, but I think that at least at this point, other than the
9  three documents that I have personally seen that I would
10 conclude are not privileged material, I don't even really know
11 what the content of the material is at this point.
12          THE COURT:  Do we know how much material is involved
13 totally?
14          MR. SMOOT:  Yes.  As I noted, agent -- and I would
15 indicate that Case Agent McEuen is present in my office during
16 this hearing on the speaker phone, but he has provided me with
17 two sealed manila envelopes, one containing the documents that I
18 saw, and one containing documents that I have not.
19          THE COURT:  Hold up.  We're going to --
20          MR. SMOOT:  It's approximately a half an --
21          THE COURT:  One minute, Mr. Smoot.  We're having a
22 problem on this end.  You're so loud coming through on our
23 material -- or on our speakers that we can't -- the court
24 reporter can't pick you up.  Maybe we can have you move back
25 slightly from the phone or turn it down slightly.

1              MR. SMOOT:  My apologies, Your Honor.  I haven't had
2    that happen before on a call.  So is that a little better?
3              THE COURT:  It's a little better, but you can turn it
4    down some more if you want to.
5              MR. SMOOT:  Okay.  And I'll get some distance as well.
6              THE COURT:  All right.  That's better.
7              MR. SMOOT:  The manila envelope that contains
8    documents that I haven't seen appears to be approximately
9    one-half inch thick.  So I guess that would maybe be the best
10   description I can give as to how much material there is.  Not a
11   lot.  It's, I don't know, maybe -- approximately a hundred
12   pages, I would guess, in terms of a half an inch thick of
13   8 1/2 x 11 paper.
14             THE COURT:  Let me ask, is that all of the documents
15   or are these only the ones that have been separated out?
16             MR. SMOOT:  My understanding, based on the reports
17   from the agents, as well as the Marshals Service, was that all
18   legal-appearing documents were separated at the cell and not
19   seized.  They were not read for content.  They were simply --
20   had clear appearance on their face of legal material.  The
21   documents that were seized were then reviewed by and FBI
22   employee that was -- that has not participated in the case at
23   all.  And my understanding is that all of the documents that
24   were provided through that first separation also passed through
25   the second separation, so therefore, there is not a third

1  envelope of clear attorney-client privilege information.
2           THE COURT: Well, let me understand. Is the envelope
3  that you have, does it contain everything that was taken from
4  the cell?
5      (PAUSE)
6           MR. SMOOT: Upon consultation with the case agent, he
7  has confirmed that, between the two envelopes, it is inclusive
8  of everything that was taken from the cell.
9           THE COURT: And are these the only copies, the ones
10 that are in your hands in the two envelopes that you have?
11          MR. SMOOT: These are the only copies. However, the
12 originals are logged into FBI evidence.
13          THE COURT: Is that the originals of both envelopes?
14 Let me understand. Let me go back. You have one envelope in
15 front of you about a half inch thick. Is there a second
16 envelope?
17          MR. SMOOT: The second envelope is -- contains three
18 documents. Those are the ones that I did review.
19          THE COURT: And are those the ones that are contained
20 in a second envelope?
21          MR. SMOOT: Yes.
22          THE COURT: Are there any other documents that were
23 taken from the cell other than those that are in the two
24 envelopes we just discussed?
25          MR. SMOOT: There are no other documents. And let me

1  clarify that.  The court is receiving copies, but they are
2  copies of originals that are logged into FBI evidence.  But
3  nothing is -- nothing has been left out in what's being provided
4  to the court.
5          THE COURT:  All right.  And in the envelope that's a
6  half inch thick, are these materials that were separated out as
7  being attorney-client or attorney confidential materials?
8          MR. SMOOT:  No.  Any document that appeared to be
9  legal in nature was initially separated out by the U.S. Marshals
10 Service and left in Mr. Brice's cell.  It was those -- those
11 documents were not seized.
12         THE COURT:  So the documents that you have that I
13 presume the government wants to utilize in some fashion include
14 both envelopes that we've just discussed?  By that I mean the
15 envelope that has three documents that you have seen, and the
16 second envelope, which is about a half inch thick.
17         MR. SMOOT:  That is correct.
18         THE COURT:  Does the government maintain that the
19 envelope that is a half inch thick contains material that's
20 potentially relevant to some investigation or some criminal
21 activity?
22         MR. SMOOT:  I can only base my response on the three
23 documents that I've seen, so I think that there is a strong
24 likelihood that the envelope -- the documents that I have not
25 seen are similar in nature and may have a relevance to this case

9

1  and possible other investigations, but I can't be a hundred
2  percent, because, obviously, I have not reviewed those
3  documents.  Based on the three that I have seen.
4          THE COURT:  From what you've indicated to me, is it
5  your, at least, preliminary conclusion that the three documents
6  you have seen have some relevance to this case?
7          MR. SMOOT:  Yes.  And I qualify that, because I am not
8  saying that each of the three documents has relevance, but I
9  would indicate that, within those three that I have seen, there
10 is evidence that I believe is relevant to the case.  In other
11 words, it may be that not all of the documents that I haven't
12 seen are relevant, but I think that there's a strong likelihood
13 that there will be relevant material in those documents.
14         THE COURT:  I assume that any search of the cell was
15 not preceded by any type of warrant?
16         MR. SMOOT:  It was not, Your Honor.  It was executed
17 under the marshals authority in relevance to federal detainees.
18         THE COURT:  Is there any reason that copies of these
19 documents should not be simultaneously provided to defense
20 counsel?
21         MR. SMOOT:  Yes, Your Honor. I believe that -- first,
22 having not seen the documents, I think it would be, it would be
23 unwise for the United States to turn m over anything that is not
24 reviewed for any number of reasons.  And secondly, it may be
25 that some of the documents are not relevant to this particular

1  matter but may be relevant to other investigations, and it
2  simply -- United States simply would not want to turn over
3  information in the blind.
4       THE COURT:  Is there -- in this case, I assume that
5  the originals that are being held by the FBI are being held and
6  not dispersed currently?
7       MR. SMOOT:  That is correct, Your Honor.  Everything
8  is on hold at this point.
9       THE COURT:  And are those in a sealed envelope or in a
10 position where they're clearly not subject to being tossed --
11 passed around?
12      MR. SMOOT:  That is correct.  It's my understanding
13 that if anybody wanted to review those documents, they would
14 have to remove them from evidence and keep a record of such
15 action.  I have instructed the case agent that, at this point,
16 any further review is on hold.
17      THE COURT:  All right.  And do I understand that the
18 documents have not been reviewed by anyone associated as a
19 prospective witness in this case, at least to the extent known
20 by the United States?
21      MR. SMOOT:  At this point, my understanding is that
22 Case Agent McEuen has reviewed documents, but he has not
23 disclosed those documents to me, other than the three.
24      THE COURT:  So he has seen them, but to your
25 knowledge, he's not gone beyond that to provide copies to

11

1 anybody else?

2 MR. SMOOT: I would indicate that another FBI employee
3 that has been involved in the case, Intelligence Analyst
4 Fitterer, has also reviewed documents, but, again, there are no
5 copies floating around at this point for any further review
6 until the court has had an opportunity to review them in camera.

7 THE COURT: Let me ask generically to both counsel,
8 there's a couple of ways to potentially handle this. First of
9 all, of course, it seems to me that the court should order that
10 the documents which are the originals remain sealed until this
11 matter has been determined and some decision made as to the
12 appropriateness of what has occurred.

13 But more importantly, or, I should say, at least of
14 significance as I sit and consider this, is this a matter that
15 should -- should these materials be reviewed by someone other
16 than the judge who's hearing the case, or should -- or is there
17 any problem with me looking at these materials and then making a
18 decision as to whether or not they're attorney-client -- or
19 attorney-client work product or attorney-client privilege?

20 MR. SMOOT: Your Honor, Russ Smoot. I guess I would
21 start at this point. I don't think that there's any problem
22 with this court reviewing the documents. The court is familiar
23 with the case. And like all cases presented, you know, before
24 this court as well as other courts, you know, the court is
25 charged with the responsibility of determining what's admissible

1   and what's not admissible.  I think there are a lot of
2   determinations that the court makes in cases like this that
3   ultimately don't go to the jury and don't affect the decisions
4   made by the trier of fact.  So my view is that this would be the
5   most appropriate court to review the in-camera documents, just
6   based on the familiarity of the case.
7             THE COURT:  Mr. Campbell, do you agree?
8             MR. CAMPBELL:  I think in that regard, I do, Your
9   Honor.  Just to explain briefly, I think the difficulty here is
10  that to some extent attorney-client privilege, it's going to be
11  hard for an outsider to assess what might be attorney-client
12  privilege.  So I do think at this point this court is the right
13  person -- the right body to assess that.
14            But if I can just have a brief moment, I think part of
15  the problem with this situation is the government had mentioned
16  that the materials weren't read for content, they were looked
17  at, scanned to see whether they were attorney -- whether they
18  were legal material.  So, again, with all due respect, the
19  government isn't part of the defense team.  I meet with
20  Mr. Brice regularly.  I take notes, he takes notes.  Those notes
21  are attorney-client privilege and work product.  So for a deputy
22  marshal or Agent McEuen to look at the materials and say, well,
23  they're not typed up on pleading paper, so therefore they're not
24  attorney-client privilege, that's simply not an adequate
25  determination.

13

1           So I don't mean to filibuster on this point, but I
2    think that as the government went on with its explanation, we've
3    seen more and more problems.  Mr. Smoot apparently hasn't seen
4    these half inch thick materials, but Agent McEuen, and I guess
5    Agent Fitterer, have.  They are part of the prosecution team.
6    If they had information that was exculpatory, Brady material,
7    they have to disclose it whether Mr. Smoot is aware of that or
8    not.  I think this is a similar analysis.  The fact that
9    Mr. Smoot hasn't looked at it doesn't cure the potential problem
10   here.
11           I would ask that -- both that the materials -- that
12   copies of materials be turned over to me, as well as reports by
13   everyone involved in the search be turned over to me.  At this
14   point, it's almost impossible for me to litigate this issue when
15   the government is essentially, with all due respect, hiding what
16   happened.  I think that at this point we need more clarity, not
17   less.
18           THE COURT:  Well, here's where I'm at on this.  First
19   of all, I would direct that the materials that are the originals
20   that have been retained remained sealed and not disseminated,
21   reproduced, or otherwise examined while this is under review.  I
22   would direct that the photocopies be sent to me.  I will review
23   them in camera.
24           I am of the belief that at some juncture defense
25   counsel is going to be entitled to see these materials.  I

1  would, however, withhold a ruling on that until I've had a
2  chance to at least look at the materials.  But I will tell you
3  that my feeling would be that defense counsel is entitled to see
4  what was taken out of the cell.  I'm only deferring that in an
5  abundance of caution until I can at least see what it is that's
6  been taken.
7        Now, with regard to timing on this and the
8  circumstances that arose, it's my understanding that the
9  defendant, who, of course, is the person who's primarily
10 involved here, is not on the line, but I don't believe there's
11 anything that we have done or that I have ordered that would be
12 different in his presence, and it's designed to essentially
13 stabilize this matter until a quick decision can be made.
14       And I would be inclined to have the materials
15 overnighted to me.  I am reluctant to have these transcribed by
16 facsimile transmission.  I would assume that, to the extent
17 there's anything on the back side of these pages, that the
18 materials that you have, Mr. Smoot, have been copied in their
19 entirety.  In other words, if there's a back side of a page that
20 has markings on it or other communications or other data, that
21 those will be included in the sealed envelope and in the three
22 materials -- three pages that you're going to send me, that
23 everything would be all inclusive, both sides of each page, if
24 there's anything on both sides or either side.
25       MR. SMOOT:  Again, I guess I'm noting the court's

15

1  concern, and I understand.  Not having seen the documents, I
2  don't know if there's back pages or if a double page sheet has
3  turned into two pages or not.  I will inquire as to who did the
4  copying, and if there's any issues with that, follow up with the
5  court.  I just -- I didn't think about that, Your Honor.  And
6  I'm presuming that everything was copied as it should have been,
7  but I will confirm that and let the court know if that's not the
8  case.
9          THE COURT:  I'm certainly not asking that I have a
10 photocopy of a blank page.  I mean, I'm --
11         MR. SMOOT:  I understand.
12         THE COURT:  My only concern is that I have a copy of
13 everything that's been provided.  And sometimes by accident,
14 without intending to do so, I've found myself inadvertently not
15 copying something that I should have.  So by raising the
16 question, I'm not in any way casting aspersions suggesting that
17 anything of that nature has been done here.  I just wanted to
18 verify it.
19         What I would be inclined to do would be to have you
20 get those out the door now.  And I don't know whether you have a
21 pickup in Spokane by Federal Express that gets them here
22 overnight this late in the afternoon or not, but at least we'll
23 have them no later than Thursday, and I would like to make an
24 immediate ruling as quickly as I can.  I would probably do it
25 with a phone call and go from there.

1           Now, let me ask a couple of additional questions.
2  Mr. Smoot, can you tell us the basis for this -- are you in a
3  position to advise concerning what prompted the search?
4           MR. SMOOT:  I am not, Your Honor, at this time.  I
5  would respectfully request an opportunity to address that later,
6  if necessary.
7           THE COURT:  All right.
8           And I'm assuming at this juncture that if we were
9  preparing affidavits and so forth, obviously when you've
10 inquired of the marshals, they're telling you that they left the
11 stuff that they believed was the attorney-client materials and
12 that the materials that they have gathered they think are
13 relevant to whatever reason caused the search in the first
14 place.  Is that a correct statement?
15          MR. SMOOT:  Yes, Your Honor.
16          THE COURT:  All right.  I don't know that there's
17 anything additional that can be done during the interim.  I
18 would direct the orders that I've just made be followed until we
19 have a chance to take a quick look at this.
20          And from the standpoint of defense counsel, is there
21 anything additional at this time that needs to be addressed?
22          MR. CAMPBELL:  Your Honor, I don't know how
23 practicable this is or whether it's sort of implied, but I guess
24 I would request that, to the extent possible, the government not
25 consult with the marshals office about what the materials were

1  that were not provided or that some sort of wall be set up to
2  prevent the additional exchange of any information that hasn't
3  already taken place to whatever extent possible.
4              THE COURT:  Well, it seems that inherent in this.  I'm
5  reluctant -- well, Mr. Smoot, your comments.
6              MR. SMOOT:  Absolutely, Your Honor.  I -- absolutely,
7  Your Honor.  I have no intention of trying to, I guess, back
8  door the privilege or further dig into any information that was
9  left in the cell.
10             THE COURT:  Well, here's where I'm at on that topic.
11 It seems to me that since the marshals office made that decision
12 and left the materials, that's the end of the inquiry, so that
13 there would be no need to go any further.  And so given your
14 representation that that won't happen, I'm going to leave that
15 as it is.
16             It looks to me like materials that need to be examined
17 are those that are in possession of the FBI that you've copied
18 or had copied, and I'll look forward to receiving those as
19 quickly as you can get those out the door.  I know that in
20 Yakima, usually there's about a 3:30 or 4:00 deadline for
21 getting overnight materials out the door if you want them to go
22 anywhere in the United States.  I'm assuming that probably you
23 may still have enough time in Spokane to get those in the mail.
24 By that I mean overnight express, Federal Express or comparable
25 deliverer, and assuming that I'll have them, I'll get a look at

1  it, take a good, hard look tomorrow.  And I would assume counsel
2  on both sides are available tomorrow?  Or tomorrow afternoon, at
3  least?
4          MR. SMOOT:  Yes.  This is Russ Smoot.  The
5  United States is available.  As soon as I'm done with this call,
6  we'll be contacting Federal Express and see if we can get this
7  out.  The other alternative is that I believe that someone from
8  our office is appearing in Yakima tomorrow if somehow we miss
9  Federal Express.  The envelopes are sealed.  That is another
10 option, but my first preference is Federal Express.
11         THE COURT:  All right.
12         MR. SMOOT:  I'm sorry, Your Honor.  I'm interrupting
13 because I did want to clarify one thing in terms of the comment
14 concerning inquiries of the Marshals Service.  And I would
15 comment that I specifically asked of the Marshals Service if
16 their determination concerning legal material, if they had
17 focused, so to speak, on any content of what they determined to
18 be legal material, and the response was no.  So, I mean,
19 that's -- my intent was not to inquire what the content was, but
20 to specifically understand the process that the Marshals Service
21 deputy used.
22         THE COURT:  All right.  Well, it seems to me that, in
23 any event, at this point we have matters stabilized, and
24 essentially the status quo is going to be maintained.  So
25 whether we receive them tomorrow or Thursday is not absolutely

```
 1   problematic.  But, of course, if we get them tomorrow, I'll get
 2   on it as quickly as possible, and we'll either hold a phone
 3   conference tomorrow or, at the latest, Thursday.
 4              MR. SMOOT:  Thank you, Your Honor.
 5              MR. CAMPBELL:  Thank you, Your Honor.
 6              THE COURT:  I appreciate -- oh, I do want to make a
 7   record, Mr. Campbell.  You've asked for this hearing on an
 8   emergency basis.  That was by phone call, I assume either just
 9   prior to or shortly after the noon hour.  That has been
10   accommodated to you.  As you know, your client is not on the
11   line.  I'm assuming that that's not an issue that you wish to
12   raise at this juncture for any purpose?
13              MR. CAMPBELL:  No, Your Honor.  I think the
14   time-sensitive nature was more important than having Mr. Brice
15   present.  I will, of course, inform him as to exactly what
16   occurred.
17              THE COURT:  All right.  With that in mind, then, we
18   are concluded.  This has been reported.  And I'll look forward
19   to the materials.  Thank you for the opportunity to talk with
20   each of you, and thank you for being available on short notice.
21   We'll be back in touch as soon as possible.
22              MR. CAMPBELL:  Thank you, Your Honor.
23              MR. SMOOT:  Thank you.
24              THE COURT:  Thank you.
25         (ADJOURNMENT AT 3:32 P.M.)
```

20

1              REPORTER'S CERTIFICATE

5  STATE OF WASHINGTON )
                       ) ss.
6  County of Yakima    )

10         I, LYNETTE WALTERS, a Registered Professional Reporter
11  and Certified Court Reporter;
12         DO HEREBY CERTIFY:
13         That the foregoing transcript, Pages 1 through 19,
14  contains a full, true, complete and accurate transcription of my
15  shorthand notes of all requested matters held in the foregoing
16  captioned case, including all objections and exceptions made by
17  counsel, rulings by the court, and any and all other matters
18  relevant to this case.
19         DATED this 19th day of June, 2012.

22                                   s/ Lynette Walters
                                     LYNETTE WALTERS, RPR, CRR, CCR
23                                   CCR NO. 2230