FILED IN THE
U.S. DISTRICT COURT
Eastern District of Washington

SEP 25 2012

JAMES R. LARSEN, Clerk
_____ Deputy
Spokane, Washington

Michael C. Ormsby
United States Attorney
Eastern District of Washington
Russell E. Smoot
Assistant United States Attorney
Post Office Box 1494
Spokane, WA 99210-1494
Telephone: (509) 353-2767

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>  vs.<br><br>JOSEPH JEFFEREY BRICE,<br><br>    Defendant. | 11-CR-00075-LRS<br><br>Plea Agreement |

Plaintiff, United States of America, by and through Michael C. Ormsby, United States Attorney for the Eastern District of Washington, and Russell E. Smoot, Assistant United States Attorney for the Eastern District of Washington, and Defendant JOSEPH JEFFEREY BRICE and the Defendant's counsel, Matthew Campbell, agree to the following Plea Agreement:

1. **Guilty Plea and Maximum Statutory Penalties:**

The Defendant, JOSEPH JEFFEREY BRICE, agrees to plead guilty to Count One and Count Three of Superseding Indictment 11-CR-00075-LRS, filed on June 21, 2011, charging the Defendant with Manufacturing an Unregistered Firearm, in violation of 26 U.S.C. § 5861(f) (Count One); and Attempt to Provide Material Support to Terrorists, in violation of 18 U.S.C. § 2339A(a), (b)(1-3) (Count Three).

Plea Agreement- 1
P20424RC.RSA.pleaagreement.brice_revised.wpd

(a).  <u>Count One</u>:

The Defendant understands that Manufacturing an Unregistered Firearm, in violation of 26 U.S.C. § 5861(f), is a Class C felony. The Defendant further understands that the statutory penalty for Manufacturing an Unregistered Firearm, in violation of 26 U.S.C. § 5861(f), is not more than ten (10) years imprisonment; a fine not to exceed $250,000; a term of supervised release of not more than three (3) years; and a $100 special penalty assessment.

(b).  <u>Count Three</u>:

The Defendant understands that Attempt to Provide Material Support to Terrorists, in violation of 18 U.S.C. § 2339A(a), (b)(1-3), is a Class C felony. The Defendant further understands that the statutory penalty for Attempt to Provide Material Support to Terrorists, in violation of 18 U.S.C. § 2339A(a), (b)(1-3), is not more than fifteen (15) years imprisonment; a fine not to exceed $250,000; a term of supervised release of not more than life, pursuant to 18 U.S.C. § 3583(j) and 18 U.S.C. § 2332b(g)(5)(B); and a $100 special penalty assessment.

(c).  <u>Possible Consecutive Sentences</u>:

The Defendant further understands that pursuant to *United States v. Booker*, 543 U.S. 220 (2005), the Court could impose consecutive sentences on each count of conviction, resulting in an aggregate maximum possible penalty of not more than twenty-five (25) years imprisonment; a fine not to exceed $500,000; and a term of supervised release of not more than life. The Defendant understands that a separate $100 special penalty assessment must be applied to *each* count of conviction (Counts One and Three).

(d).  <u>Supervised Release</u>:

The Defendant understands that a violation of a condition of supervised release carries an additional penalty of re-imprisonment for all or part of the term of supervised release, pursuant to 18 U.S.C. § 3583(e)(3), without credit for time previously served on post-release supervision.

Plea Agreement- 2
P20424RC.RSA.pleaagreement.brice_revised.wpd

2. <u>The Court is Not a Party to the Agreement</u>:

The Court is not a party to this Plea Agreement and may accept or reject this Plea Agreement. Sentencing is a matter that is solely within the discretion of the Court. The Defendant understands that the Court is under no obligation to accept any recommendations made by the United States and/or by the Defendant; that the Court will obtain an independent report and sentencing recommendation from the U.S. Probation Office; and that the Court may, in its discretion, impose any sentence it deems appropriate up to the statutory maximums stated in this Plea Agreement.

The Defendant acknowledges that no promises of any type have been made to the Defendant with respect to the sentence the Court will impose in this matter. The Defendant understands that the Court is required to consider the applicable sentencing guideline range, but may depart upward or downward under the appropriate circumstances.

The Defendant also understands that should the sentencing judge decide not to accept any of the parties' recommendations, that decision is not a basis for withdrawing from this Plea Agreement or a basis for withdrawing this plea of guilty.

3. <u>Waiver of Constitutional Rights</u>:

The Defendant, JOSEPH JEFFEREY BRICE, understands that by entering this plea of guilty the Defendant is knowingly and voluntarily waiving certain constitutional rights, including:

    (a). The right to a jury trial;

    (b). The right to see, hear and question the witnesses;

    (c). The right to remain silent at trial;

    (d). The right to testify at trial; and

    (e). The right to compel witnesses to testify.

While the Defendant is waiving certain constitutional rights, the Defendant understands the Defendant retains the right to be assisted through the sentencing and any direct appeal of the conviction and sentence by an attorney, who will be appointed at no cost if the Defendant cannot afford to hire an attorney. The Defendant also acknowledges that any pretrial motions currently pending before the Court are waived.

4.  Elements of the Offenses:

(a). Count One:

The United States and the Defendant agree that in order to convict the Defendant of Manufacturing an Unregistered Firearm, in violation of 26 U.S.C. § 5861(f), the United States would have to prove beyond a reasonable doubt the following elements:

*First*, on or about April 18, 2010, in the Eastern District of Washington, the Defendant knowingly manufactured a firearm, specifically a destructive device, as defined pursuant to 26 U.S.C. § 5845(a)(8), (f)(1)(A); and

*Second*, the destructive device was not registered to the Defendant in the National Firearms Registration and Transfer Record.

(b). Count Three:

The United States and the Defendant agree that in order to convict the Defendant of Attempt to Provide Material Support to Terrorists, in violation of 18 U.S.C. § 2339A(a), (b)(1-3), the United States would have to prove beyond a reasonable doubt the following elements:

*First*, on or about December 21, 2010, and continuing through on or about May 8, 2011, in the Eastern District of Washington, the Defendant, JOSEPH JEFFREY BRICE, attempted to provide material support or resources, in the form of training or expert advice or assistance, and

*Second*, the Defendant knew or intended that the material support or resources were to be used in preparation for or to carry out another specified Federal offense, to wit: the use, threatened use, or attempted use of a weapon of mass destruction against any person or property which would have affected interstate commerce.

5. <u>Factual Basis and Statement of Facts</u>:

The United States and the Defendant stipulate and agree that the following facts are accurate; that the United States could prove these facts beyond a reasonable doubt at trial; and that these facts constitute an adequate factual basis for JOSEPH JEFFEREY BRICE's guilty plea. This statement of facts does not preclude either party from presenting and arguing, for sentencing purposes, additional facts which are relevant to the guideline computation, the sentencing factors, or any other sentencing arguments by the United States or the Defendant.

(a). <u>Count One</u>:

On April 18, 2010, at approximately 4:16 p.m., the Whitman County Sheriff's Office ("WCSO") received a call reporting a firearms accident on SR193 at approximately Mile Post 1 (the location of the incident was subsequently determined to be Mile Post 3), in Whitman County, in the Eastern District of Washington. At the scene, WCSO Deputy Keller encountered Defendant JOSEPH JEFFEREY BRICE (hereinafter "BRICE") who appeared to have been injured during the detonation of a home-made Improvised Explosive Device ("IED"). BRICE was at the scene being treated by paramedics for injuries to both legs. BRICE was heard stating, "What have I done to myself?" Due to the injuries BRICE sustained during the explosion (including severe burns to his legs, broken bones, loss of consciousness for approximately 12 days, and damage to his vocal chords), WCSO Deputy Keller was not able to interview BRICE until approximately four months after the incident.

Plea Agreement- 5
P20424RC.RSA.pleaagreement.brice_revised.wpd

On August 14, 2010, Deputy Keller spoke with BRICE over the telephone. BRICE stated he made the IED out of a combination of ammonium nitrate fertilizer, acetone peroxide, hydrogen peroxide and concrete bleach (a strong acid). According to Federal Bureau of Investigation ("FBI") Special Agent Bomb Technician ("SABT") Lee McEuen, the combination of ammonium nitrate fertilizer, acetone peroxide, hydrogen peroxide and concrete bleach is used to make Triacetone Triperoxide Peroxyacetone ("TATP") explosives, and Acetone Peroxide Ammonium Nitrate ("APAN") explosives, both of which are highly unstable and have no known legal commercial use. BRICE indicated that the IED weighed about 2.5 pounds (however, based on BRICE's own statements in text-messages and internet postings, it may have been as much as 8 pounds). BRICE stated he has always been good at chemistry and "likes doing things like this."

FBI SABT McEuen contacted the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") and learned that BRICE had not registered the IED with the National Firearms Registration and Transfer Record.

(b). Count Three:

In early January 2011, Federal Bureau of Investigation ("FBI") and the Inland Northwest Joint Terrorism Task Force ("INJTTF") had received information concerning BRICE's on-going interest in explosives – and possible *new* growing interest in terrorist activities, Specifically, FBI SABT McEuen learned that between December 2010, and January 2011, BRICE posted at least five videos on the *StrengthofAllah* channel on the internet site "YouTube." One video, posted by *StrengthofAllah* on January 10, 2011, was titled, "50 Kg ANFO," with the comment, "50 Kilograms ANFO inside a small house Praise be to Allah (SWT)." The video began with a logo known to be associated with Al-Tawhid Wal Jihad (translation: "Al-Qa'ida in Iraq") and a Nashid chant soundtrack. The video depicted a small, dark-red house being destroyed by an explosion. The

Plea Agreement- 6
P20424RC.RSA.pleaagreement.brice_revised.wpd

1  shockwave destroyed the house and sent debris across the road before knocking
2  the camera down.
3       Two additional videos, titled ".5 kg APAN" and ".3KG APAN," had been
4  posted by *StrengthofAllah* on December 28, 2010. Each of the videos began with
5  the same logo for Al-Tawhid Wal Jihad (translation: "Al-Qa'ida in Iraq") and a
6  Nashid chant soundtrack, followed by a small explosion on the ground near a dirt
7  access road along a river with rolling hills in the background. The author's
8  comment for the video titled ".3KG APAN" read, "All praise due to Allah under
9  all conditions. Sorry about the camera work, was too close had to step back and
10 caused bad filming." The "APAN" videos depicted explosions of less magnitude
11 than the video of the 50 pound charge.
12      Finally, two more videos, titled "shaheedan" and "zmuzh ghanian," were
13 posted by the user *StrengthofAllah* on December 29, 2010. Each of the videos
14 began with a logo, comprising a map of Afghanistan with two swords and an
15 image of the Koran. Both videos depicted still photographs of mujahedeen and
16 martyrs. A Nashid chant soundtrack was looped for the duration of the video.
17      After viewing the videos, FBI SABT McEuen contacted Whitman County
18 Sheriff's Office Sergeant Chris Chapman to review the incident reports from the
19 April 18, 2010, IED explosion that injured BRICE. Based on his review of the
20 crime scene photographs, and visual comparison of the location of the April 18,
21 2010, incident, FBI SABT McEuen determined that the location of the April 18,
22 2010, incident and location depicted in the APAN videos posted on the
23 *StrengthofAllah* YouTube channel was the same.
24      FBI SABT McEuen continued the investigation through the execution of
25 search warrants, grand jury subpoenas, and pen register orders on email accounts,
26 cellular telephone service, and IP addresses believed to be associated with BRICE.
27 In aggregate, the "electronic media" phase of FBI SABT McEuen's investigation
28 resulted in FBI receiving an extensive amount of email correspondence, text-

1 messaging, and internet postings (including conversations and/or "chats")
2 evidencing BRICE's on-going interest in explosives and terrorist groups who
3 utilize explosive devices. The "electronic media" phase of the investigation also
4 identified contact between computers used by BRICE, in the Eastern District of
5 Washington, and a foreign-based internet web-site that provides opportunities for
6 both public and private discussions of jihad and terrorist activities.

7 On March 30, 2011, "Abu Harith" requested an account on the above-
8 referenced internet web-site. The account, which was activated several days later,
9 allowed Abu Harith to access the private part of the web-site and conduct a review
10 of numerous postings by username "Yusuf90," which was known to be associated
11 with BRICE. The account also facilitated Abu Harith's contact with BRICE.

12 During the FBI review of the internet web-site, FBI learned that on
13 December 26, 2010, in response to a "thread" titled, "I'm a Proud Terrorist" in the
14 English Section "General Discussion" forum on the internet web-site (the "thread"
15 was created by an unrelated third-party), "Yusuf90" [BRICE] replied with the
16 following posting:

> Strike fear into the hearts of the Kuffar namely the United States and it's [sic] allies. But I call not for the lives of the innocent citizens of the United States but mainly it's [sic] government systems which are the real criminals. There are so many ignorant Americans it's unbelievable. They don't even know their own holy book, we know theirs [sic] better than they do.
>
> Allah grants blessings to those who fight against tyranny and prey on the weak.

22 On May 1, 2011, Abu Harith initiated contact with BRICE through the
23 internet web-site by replying to a "Medical Care" thread of which BRICE had
24 previously replied. Abu Harith also sent a private message to "Yusuf90" [BRICE]
25 titled, "Help." The "medical care"-related discussion between Abu Harith and
26 BRICE continued.
27 On May 2, 2011, during the continuation of the internet conversation
28 between Abu Harith and "Yusuf90" [BRICE], Abu Harith stated:

Plea Agreement- 8
P20424RC.RSA.pleaagreement.brice_revised.wpd

\* \* \*

Shukran [*Translation: "Thank you"*] Akhi [*Translation: "Brother"*] for your eagerness to help. I am sure in lieu of the yesterday's events [*the death of Osama Bin Laden had occured the previous day*] the time to help with calcium carbonate has passed. Before we can trust you to help us we need to know about you and your expertise.

For security reasons all I can divulge to you is that I [sic] live in, midwest, Dar El Harb [*Translation: "America"*]. We need to be very careful akhi [*Translation: "Brother"*] and in the future I would like to communicate through secure e-mail like gmail.

\* \* \*

On May 3, 2011, Abu Harith sent an additional reply to the private message from "Yusuf90" [BRICE] titled, "Re: Help," with the following posting:

Akhi [*Translation: "Brother"*] Yusuf,

I have reading your posts and it is time to act. Are you willing help. contact me on abuharith1978@gmail.com

Jazak Allah Kheyr

Akhook Abu Harith [*Translation: "Your brother Abu Harith"*]

On May 5, 2011, BRICE created the email account allahguidance@gmail.com. and sent a message to Abu Harith through his gmail account titled, "The Beginning," with the following posting:

as-salaamu 3alaykum [*Translation: "Peace be upon you."*]

I am sorry it took me days to respond Akhi [*Translation: Brother*] Abu. I am also in Dar al-Harb [*Translation: "America"*]

Indeed, now is the time for action. But we must keep safe in this time as well.

Knowledge is for acting upon, so our duty as Muslims is to act swift and with strength.

Stay safe.

May Allah, the merciful, watch over us.

Amen [*Translation: "Amen"*]

Yusuf

Plea Agreement- 9
P20424RC.RSA.pleaagreement.brice_revised.wpd

1  On May 6, 2011, Abu Harith replied to the email titled, "Re: The
2  beginning," with the following posting:

3  Akhi [*Translation: "Brother"*] Yusuf,

4  Assalamu 3alaykum wa ra7matu Allahi wa barakatihi. [*Translation: "Peace be upon you and Allah's blessing and blessings."*]

5

6  Thank you for the reply I was start to worry about you not wanting to help. Let me command you for your cautiousness by reaching for me on gmail, it is safest. Living in Dar El Harb [*Translation: "America"*] we have to be very safe.

7

8  Akhi [*Translation: "Brother"*] we read your posts on Din el Haqq and are very impressed by your know of chemistry. We are in the middle of planning something big that will hurt the kuffar [*Translation: "Infidels"*] and inshallah [*Translation: "God willing"*] teach them a lesson. Forgive me for not providing you with details, the less you know the better for you. But we need your help very soon.

9

10

11

12  We have the needed material but are having problems with consistently making the tafjir [*Translation: "Detonation"*]. Can you help us?

13

14  Jazak Allah Kheyr Akhi. [*Translation: "May Allah reward you for your good deeds brother."*]

15

16  Akhook Abu Harith [*Translation: "Your brother Abu Harith"*]

17  On May 7, 2011, "Yusuf" [BRICE] at allahguidance@gmail.com. replied to the email titled, "Re: The beginning," with the following posting:

18

19  [*Arabic Printing*] [*Translation: "Peace be upon you"*]

20  I am always willing to help my brothers but I must know more specific parts of your plan. I must also stress that the kafir [*Translation: "infidel"*] is becoming very smart in order to fool fellow brothers and sisters into joining them , then they are arrested . Can you prove to me you are who you say you are and that I can trust you?

21

22

23  What problems are you having with your project? If you have the needed materials, insha'Allah [*Translation: "Allah or God willing"*]. you should be able to build the correctly. My trust is in you, therefore I expect in return.

24

25

26  Stay safe.

27  [*Arabic Printing*] akhi [*Translation: "May Allah reward you for your good deeds brother"*]

28  Y.

Plea Agreement- 10
P20424RC.RSA.pleaagreement.brice_revised.wpd

1  On May 7, 2011, Abu Harith replied to the email titled, "Re: The
2  beginning," with the following posting asking for BRICE's help in providing
3  advice or information concerning "problems" Abu Harith, who had previously
4  indicated was in America, claimed to be having igniting explosives that Abu
5  Harith explained were to be used against those who have been hurting their
6  "brothers" in Iraq and Usama Bin Laden.

> [*Arabic Printing*] [*Translation: "Peace be upon you as well and Allah's mercy and blessings."*]
>
> Akhi [*Translation: "Brother"*] Yusuf
>
> I am very impressed by your cautiousness and have to agree with you about the Kufar [*Translation: "Infidels"*]. I have been living in Dar El Harb [*Translation "America"*] for a while and have seen too many ikhwan mujahideen [*Translation: "Holy warrior brothers"*] being arrested, because of carelessness and have to be honest wondered about you as weell [sic]. WHat [sic] can I do to prove to you that I am who I say I am?
>
> As for the target I cannot go into details for the same reasons we talked about before, but I can tell you that the target is those who have been hurting our Ikhwan [*Translation: "Brothers"*] in Iraq and other places for years and specifically our Sheikh Abu Abdallah [*Translation: "Usama Bin Laden"*] last week, the junud [*Translation: "Soldiers"*].
>
> Akhi [*Translation: "Brother"*] I will let you decide whether you want to help or not. Here is our problem. We are using nail polish remover (acitone) [sic] and beroxide [sic] cap in diesel fuel and amoniom [sic] ntrate [sic] but we are not always getting infijar [*Translation: "Detonation"*] all the time, ahyanan [*Translation: "Sometimes"*] yes wa [and] ahyanan [*Translation: "Sometimes"*] No.
>
> Akhi [*Translation: "Brother"*] you decide if you want to help or not but either way let me know soon.
>
> [*Arabic Printing*] [*Translation: "May Allah reward you for your good deeds."*]
>
> [*Arabic Printing*] [*Translation: "Your brother in Allah Abu Harith."*]

On May 8, 2011, "Yusuf" [BRICE] at allahguidance@gmail.com. replied to
the email titled, "Re: The beginning," with the following posting:

> The only way to earn my trust is to give me more information what you are planning.
>
> Do not use nail polish remover. Use real 90% or higher acetone , you can buy this at hardware stores. If you are making TATP which is

Plea Agreement- 11
P20424RC.RSA.pleaagreement.brice_revised.wpd

acetone peroxide, you cannot use this as a blasting cap for ANFO (ammonium nitrate/diesel). If you are using tatp for your caps you need to build a booster to bridge the two. ANFO is difficult to detonate. You need to take your acetone peroxide and dehydrate your nitrate by baking in the oven for 30-60 minutes. Ammonium nitrate will not work properly if the water molecules from the air are absorbed. DO NOT PUT THE ACETONE PEROXIDE IN THE OVEN. JUST THE FERTILIZER.

A booster should be around 300-500 grams.

To make this , take a ratio of 12:88 APAN (Acetone peroxide -ammonium nitrate). So if you have 100 grams of APAN, you should measure 12 grams of AP and 88 grams of nitrate .. and then mix the two well. This booster can be detonated with a simple acetone peroxide blast cap. Bury the cap in the booster with just the fuse or wire from the cap sticking out. It's important to cover the cap inside the booster entirely or you may have a failed detonation.

Once you have a booster made, you can then mix your Ammonium nitrate- diesel fuel at a ratio of 94:6 . Remember that this measurement is by weight so if you made a 100 gram anfo device, you would measure 94 grams of nitrate and 6 grams of fuel. Mix this well and let it absorb for a hour. Make sure to seal both the booster and the anfo so it does not absorb water from the air. Plastic gallon sized bags are good to use . Double wrap them to avoid fuel leaking through and getting on your hands or to hide the smell of fuel.

Wrap the AN-FO around the booster . If you have done this correctly , your nitrate will detonate. ANFO requires heavy detonation so you must use a booster to build a bridge between the cap and the ANFO.

BUT, you have to perfect your work , there are often many failed detonations before you achieve success. Be careful , this is dangerous work, follow all precautions safely.

First you need to make sure you are making correct acetone peroxide, then move on to your booster. Test your booster before building a large explosive as to avoid wasting your time.

You will most likely need to ask me more questions because it is hard to explain everything in one email. But I need you to tell me , where are you getting your ammonium nitrate from ? You have to be using the correct type. Some have new ingredients in the nitrate so that they cannot be made into explosives.

I will design a diagram for you to better understand how to use the booster but first I need you to answer these questions in the next email.
-Where are you getting your nitrate from?
-Are you stabilizing the acetone peroxide with baking soda powder after you filter it ?
-In acetone peroxide there are 3 chemicals; Acetone, hydrogen peroxide, and third is an acid. Sulfuric acid is too difficult to acquire, use an acid called "muriatic acid" . This is found in all hardware

1  stores for a very low price, it is used to clean pools and concrete ground. It is dangerous so avoid inhaling.

2  Jazak Allah khayr akhi [*Translation: "May Allah reward you for your good deeds brother."*]

According to FBI SABT McEuen, the information BRICE provided to Abu Harith was correct and would have resulted in "fixing" the detonation problem.

On May 9, 2011, FBI and INJTTF arrested BRICE. When BRICE was taken into custody, FBI SABT McEuen and FBI RAC Harrill advised BRICE of his rights. BRICE waived his right to remain silent, signed an Advice of Rights form, and provided a recorded statement to FBI SABT McEuen and FBI RAC Harrill. Essentially, BRICE confirmed that he had established the *StrengthofAllah* YouTube channel and posted the explosive-related and terrorist-related videos. Additionally, BRICE stated he was a member of the "jihadi" website "Deen al-Haqq" and used the screen name "Yusuf90" on that site. BRICE admitted that he posted files that contained step by step instructions to make the improvised explosives, including TATP and APAN on that site. BRICE indicated he created the account allahguidance@gmail.com and sent Abu Harith detailed information on how to make and use explosives. BRICE stated he supplied the explosives knowledge and files to the jihadists in order to gain their trust, obtain access to them, and learn what their plans were. He stated he did not report any of his activities to law enforcement, but may have in the future.

During the post-arrest interview, BRICE also signed a Consent to Assume Online Presence and provided the screen name allahguidance@gmail.com. and the password "ronald55." On May 16, 2011, the FBI accessed the account using the provided screen name and password. The string of email communications between "Yusuf" [BRICE] at allahguidance@gmail.com and "Abu Harith" was located. "Abu Harith" was an alias created by an FBI undercover employee.

Plea Agreement- 13
P20424RC.RSA.pleaagreement.brice_revised.wpd

6. <u>Waiver of Inadmissibility of Statements</u>:

The Defendant agrees to waive the inadmissibility of statements made in the course of plea discussions with the United States, pursuant to Fed. R. Crim. P. 11(f). This waiver shall apply if the Defendant withdraws this guilty plea or breaches this Plea Agreement. The Defendant acknowledges that any statements made by the Defendant to law enforcement agents in the course of plea discussions in this case would be admissible against the Defendant in the United States's case-in-chief if the Defendant were to withdraw or breach this Plea Agreement.

7. <u>The United States Agrees</u>:

(a). <u>Dismissal(s)</u>:

At the time of sentencing, the United States agrees to move to dismiss Count Two of Superseding Indictment 11-CR-00075-LRS, which charges the Defendant with Distribution of Information Relating to Explosives, Destructive Devices, and Weapons of Mass Destruction, in violation of 18 U.S.C. §§ 842(p)(2), 844(a)(2).

(b). <u>Not to File Additional Charges</u>:

The United States Attorney's Office for the Eastern District of Washington agrees not to bring any additional charges against the Defendant based upon information in its possession at the time of this Plea Agreement, unless the Defendant breaches this Plea Agreement any time before or after sentencing.

8. <u>United States Sentencing Guideline Calculations</u>:

The Defendant understands and acknowledges that the United States Sentencing Guidelines (hereinafter "U.S.S.G.") are applicable to this case, in that the Court must consider and determine the Defendant's applicable sentencing guideline range at the time of sentencing. The Defendant also understands, however, that pursuant to <u>United States v. Booker</u>, 543 U.S. 220 (2005), the U.S.S.G. range is advisory, and that the Court is required to consider the factors set forth in 18 U.S.C. § 3553(a), and to impose a reasonable sentence.

Plea Agreement- 14
P20424RC.RSA.pleaagreement.brice_revised.wpd

(a).  Offense Level for Count One:

(I).  Base Offense Level:

The United States and the Defendant agree to recommend that the Court establish the base offense level for Manufacturing an Unregistered Firearm, in violation of 26 U.S.C. § 5861(f), at eighteen (18). See U.S.S.G. §2K2.1(a)(5).

(ii).  Specific Offense Characteristics:

The United States and the Defendant stipulate and agree that the base offense level is increased by an additional two (2) levels because the offense involved a destructive device that was not a portable rocket, a missile, or a device for use in launching a portable rocket or a missile. See U.S.S.G. §2K2.1(b)(3)(B).

(b).  Offense Level for Count Three:

(I).  Base Offense Level:

The United States and the Defendant agree to recommend that the Court establish the base offense level for Attempt to Provide Material Support to Terrorists, in violation of 18 U.S.C. § 2339A(a), (b)(1-3), at twenty-six (26). See U.S.S.G. §2M5.3(a); see also U.S.S.G. §2X5.1 ("If the offense is a felony for which no guideline expressly has been promulgated, apply the most analogous guideline.").

(ii).  Specific Offense Characteristics:

The United States and the Defendant stipulate and agree that the base offense level is increased by an additional two (2) levels because the offense involved the provision of material support with the intent, knowledge or reason to believe the material support is to be used to commit or assist the commission of a violent act. See U.S.S.G. §2M5.3(b)(1)(E).

(iii).  Terrorism Enhancement:

The United States and the Defendant stipulate and agree that the adjusted offense level is increased by an additional twelve (12) levels because the offense is

a felony that involved, or was intended to promote, a federal crime of terrorism, as defined in 18 U.S.C. § 2332b(g)(5). See U.S.S.G. §3A1.4(a).

(c). <u>Multiple Count Analysis</u>:

The United States and the Defendant agree that because the offense level for Count One is more than nine (9) levels less serious than the offense level for Count Three, the offense level does not increase. See U.S.S.G. §3D1.4(c).

(d). <u>Acceptance of Responsibility</u>:

If the Defendant pleads guilty and demonstrates a recognition and an affirmative acceptance of personal responsibility for the criminal conduct; provides complete and accurate information during the sentencing process; does not commit any obstructive conduct; and enters a plea of guilty no later than September 25, 2012, the United States will move for a three (3) level downward adjustment in the offense level for the Defendant's timely acceptance of responsibility, pursuant to U.S.S.G. §3E1.1(a) and (b).

The Defendant and the United States agree that the United States may at its option and upon written notice to the Defendant, not recommend a three (3) level downward reduction for acceptance of responsibility if, prior to the imposition of sentence, the Defendant is charged or convicted of any criminal offense whatsoever or if the Defendant tests positive for any controlled substance.

Furthermore, the Defendant agrees to pay the $200 mandatory special penalty assessment *($100 for each felony count, 18 U.S.C. § 3013(a)(2)(A))* to the Clerk of Court for the Eastern District of Washington, at or before sentencing, and shall provide a receipt from the Clerk to the United States before sentencing as proof of this payment, as a condition to this recommendation by the United States.

(e). <u>Final Adjusted Offense Level</u>:

The United States and the Defendant stipulate and agree that if the Court applies a downward adjustment for acceptance of responsibility pursuant to U.S.S.G. §3E1.1, the final adjusted offense level is thirty-seven (37).

Plea Agreement- 16
P20424RC.RSA.pleaagreement.brice_revised.wpd

(f). <u>Criminal History</u>:

The United States and the Defendant stipulate and agree that because the offense is a felony that involved, or was intended to promote, a federal crime of terrorism, as defined in 18 U.S.C. § 2332b(g)(5), and U.S.S.G. §3A1.4(a) applies to Count Three, the Defendant's Criminal History Category is VI. <u>See</u> U.S.S.G. §3A1.4(b).

9. <u>Incarceration</u>:

The United States agrees to recommend not more than a ten (10)-year term of imprisonment on Count One and not more than a fifteen (15)-year term of imprisonment on Count Three to be served concurrently. The Defendant is free to make whatever recommendation concerning the imposition of a term of imprisonment he believes is reasonable and sufficient, but not greater than necessary, to comply with the purposes set forth in 18 U.S.C. § 3553(a)(2).

10. <u>Criminal Fine</u>:

The United States and the Defendant are free to make whatever recommendation concerning the imposition of a criminal fine that they believe is appropriate.

11. <u>Supervised Release</u>:

The United States intends to recommend, pursuant to 18 U.S.C. § 3583(j) and 18 U.S.C. § 2332b(g)(5)(B), that the Court impose a life term of supervised release to include the following special conditions, in addition to the standard conditions of supervised release:

(a). that the Defendant complete mental health evaluations and treatment, including taking medications prescribed by the treatment provider. The Defendant shall allow reciprocal release of information between the Probation Officer and the treatment provider. The Defendant shall contribute to the cost of treatment according to the Defendant's ability;

Plea Agreement- 17
P20424RC.RSA.pleaagreement.brice_revised.wpd

(b).  that the Defendant's person, residence, office, vehicle, and belongings are subject to search at the direction of the Probation Officer.

12. **Mandatory Special Penalty Assessment:**

The Defendant agrees to pay the $200 mandatory special penalty assessment to the Clerk of Court for the Eastern District of Washington, at or before sentencing, pursuant to 18 U.S.C. § 3013 and shall provide a receipt from the Clerk to the United States before sentencing as proof of this payment.

13. **Payments While Incarcerated:**

If the Defendant lacks the financial resources to pay the monetary obligations imposed by the Court, the Defendant agrees to earn the money to pay toward these obligations by participating in the Bureau of Prisons' Inmate Financial Responsibility Program.

14. **Forfeiture:**

The Defendant agrees to voluntarily forfeit, abandon and relinquish all right, title and interest in all the computer equipment, disks, peripherals, cameras and other items seized on May 9, 2011, to the United States, and hereby agrees to execute any and all forms and pleadings necessary to effectuate such forfeiture.

15. **Additional Violations of Law Can Void Plea Agreement:**

The Defendant and the United States agree that the United States may at its option and upon written notice to the Defendant, withdraw from this Plea Agreement or modify its recommendation for sentence if, prior to the imposition of sentence, the Defendant is charged or convicted of any criminal offense whatsoever or if the Defendant tests positive for any controlled substance.

16. **Appeal Rights:**

Nothing in this Plea Agreement shall preclude the United States from opposing any motion for reduction of sentence or other attack of the conviction or sentence, including but not limited to proceedings pursuant to 28 U.S.C. § 2255

Plea Agreement- 18
P20424RC.RSA.pleaagreement.brice_revised.wpd

(Writ of Habeas Corpus). Should this conviction be set aside, reversed, or vacated, this Plea Agreement is null and void and the United States may institute or re-institute any charges against the Defendant and make derivative use of any statements or information the Defendant has provided. Furthermore, nothing precludes the United States or the Defendant from appealing an unreasonable or illegal sentence.

17. <u>Integration Clause</u>:

The United States and the Defendant acknowledge that this document constitutes the entire Plea Agreement between the United States and the Defendant, and no other promises, agreements, or conditions exist between the United States and the Defendant concerning the resolution of the case. This Plea Agreement is binding only upon the United States Attorney's Office for the Eastern District of Washington, and cannot bind other federal, state or local authorities. The United States and the Defendant agree that this agreement cannot be modified except in a writing that is signed by the United States and the Defendant.

<u>Approvals and Signatures</u>

Agreed and submitted on behalf of the United States Attorney's Office for the Eastern District of Washington.

Michael C. Ormsby
United States Attorney

_____    Sept. 25, 2012
Russell E. Smoot                   Date
Assistant U.S. Attorney

I have read this Plea Agreement and have carefully reviewed and discussed every part of the agreement with my attorney. I understand and voluntarily enter

Plea Agreement- 19
P20424RC.RSA.pleaagreement.brice_revised.wpd

into this Plea Agreement. Furthermore, I have consulted with my attorney about my rights, I understand those rights, and I am satisfied with the representation of my attorney in this case. No other promises or inducements have been made to me, other than those contained in this Plea Agreement and no one has threatened or forced me in any way to enter into this Plea Agreement. I am agreeing to plead guilty because I am guilty.

_____    9-25-12
JOSEPH JEFFEREY BRICE            Date
Defendant

I have read the Plea Agreement and have discussed the contents of the agreement with my client. The Plea Agreement accurately and completely sets forth the entirety of the agreement between the parties. I concur in my client's decision to plead guilty as set forth in the Plea Agreement. There is no legal reason why the Court should not accept the Defendant's plea of guilty.

_____    9-25-12
Matthew Campbell                 Date
Attorney for the Defendant

Plea Agreement- 20
P20424RC.RSA.pleaagreement.brice_revised.wpd