Matthew Campbell
FEDERAL DEFENDERS OF EASTERN WASHINGTON AND IDAHO
10 North Post, Suite 700
Spokane, Washington 99201
(509) 624-7606

Attorneys for Defendant

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON
(HONORABLE LONNY R. SUKO)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR-11-075-LRS |
| | ) | |
| Plaintiff, | ) | MOTION TO DISMISS FOR |
| | ) | VIOLATION OF SIXTH |
| vs. | ) | AMENDMENT RIGHTS AND |
| | ) | PRIVILEGES |
| JEREMY JEFFREY BRICE, | ) | |
| | ) | 05/08/13 |
| Defendant. | ) | With Oral Argument 10:30 AM |
| ——————————————— | ) | Spokane, WA |

JOSEPH JEFFREY BRICE, through counsel, Matthew Campbell for the

Federal Defenders of Eastern Washington and Idaho, moves for a dismissal of the

charges against him, based on violations of Mr. Brice's Sixth Amendment right to

counsel, including violations of the attorney-client and work-product privileges.

**I. Background[1]**

---

[1]    The facts set forth herein come from discovery provided by the

Government, as well personal knowledge and investigation. Should the

MOTION TO DISMISS

1

1  On June 21, 2011, the Grand Jury returned a superseding indictment charging

2 one count of manufacturing an unregistered firearm pursuant to 26 U.S.C.§ 5861,

3 one count of distribution of information relating to explosives pursuant to 18 U.S.C.

4 § 842(p)(2), and one count of attempt to provide material support to terrorists

5 pursuant to 18 U.S.C. § 2339A.

6  On May 18, 2012 Mr. Brice's jail cell in the Spokane County Jail was

7 searched. That search was performed without a search warrant or any form of court

8 authorization. No special master, or similar neutral party, was used to perform the

9 search, nor was consent given by Mr. Brice authorizing the search.  That search was

10 specifically performed in order to search Mr. Brice's written materials.

11  The initial search was performed by Deputy United States Marshal Hank

12 Shafer. Deputy Shafer personally reviewed all of Mr. Brice's written materials

13 which were in an envelope marked "Legal," and separated those documents into two

14 categories – (1) privileged legal materials and (2) other materials.  The legal

15 materials contained therein included attorney-client and work-product privileged

16 materials including trial strategy.  As it ultimately turned out, approximately ten

17 months later, the other materials also contained attorney-client and work-product

18 privileged materials.

19  The Government initially claimed that Deputy Shafer was selected to perform

20

21 Government contest any of the facts contained herein, Mr. Brice is prepared to

22 prove these facts at an evidentiary hearing.

23

24 MOTION TO DISMISS

1    the search because he was not part of the investigation of Mr. Brice.  Therefore he

2    was chosen to conduct the initial screening of the material and separate out that

3    which was privileged.[2]  However Deputy Shafer and his canine Lori, who is trained

4    in explosives detection, participated in the search of Mr. Brice's girlfriend's vehicle

5    as well as Mr. Brice's apartment.  Both searches occurred at the time of Mr. Brice's

6    arrest, and Deputy Shafer authored at least one report which has been provided to the

7    defense as part of discovery.  Additionally Deputy Shafer was also involved in a

8    conversation about this case with Mr. Brice in November, 2011.

9         After reading all of Mr. Brice's materials, Deputy Shafer provided the

10   materials claimed not to be privileged to SA McEuen and FBI Intelligence Analyst

11   Pulcastro for further review.  The Government initially claimed that Analyst

12   Pulcastro was selected to review the materials in order to determine which were

13   privileged and which were not.[3]  Pulcastro had also previously been involved in the

14   investigation of Mr. Brice.

15        Upon the conclusion of Deputy Shafer's review and Analyst Pulcastro's

16   _____

17        [2]     Upon information and belief, undersigned counsel would assert that

18   Deputy Shafer has not graduated from law school, nor has Deputy Shafer been

19   admitted to the Bar of any state or territory in the United States.

20        [3]     Undersigned counsel has been provided no information demonstrating

21   Analyst Pulcastro's qualifications to determine whether materials are protected by

22   the Sixth Amendment, the attorney-client privilege or the work-product privilege.

23

24   MOTION TO DISMISS

1   review, the materials found not to be privileged were then delivered to SA McEuen.[4]

2   SA McEuen then reviewed the entire stack of documents turned over to him by

3   Shafer and Pulcastro, which were allegedly not privileged.

4       AUSA Russell Smoot had been contacted prior to the search of Mr. Brice's

5   cell, and he was also contacted after the search had been performed. After the

6   materials were reviewed by SA McEuen, they were delivered to AUSA Smoot.  Mr.

7   Smoot thus had access to the materials for approximately four days until

8   undersigned counsel learned of the jail search.

9       This four day delay occurred because when Mr. Brice's cell was searched, he

10  was transferred to 6-East, the most restrictive area in the Spokane County Jail.  Mr.

11  Brice had immediately asked to call undersigned counsel. That request was refused.

12  Mr. Brice was not allowed to make a single phone call until four days later.

13  Undersigned counsel was not informed of the search by Mr. Brice until May 22,

14  2012, when Mr. Brice was finally allowed to make a phone call.  The government

15  made no effort to inform undersigned counsel of the search,

16      Undersigned counsel contacted the US Marshals Office, because counsel was

17  _____

18      [4]      According to the California State Bar Association, SA McEuen

19  graduated from the University of San Diego Law School, and was admitted to the

20  California State Bar in 1995.  As the case agent in this case, however, once he

21  reviewed the materials given him by SA Pulcastro, "the cat was out of the bag" as

22  far an the privileged material contained therein.

23

24  MOTION TO DISMISS

1   told that the search was conducted by the Marshals.  The Marshal's Office directed

2   counsel to contact AUSA Smoot.  Counsel then contacted AUSA Smoot regarding

3   the search.  AUSA Smoot told counsel that inquiries should be directed to the US

4   Marshals.  Counsel told AUSA Smoot that the Marshals had directed inquiries to

5   AUSA Smoot. AUSA Smoot gave a noncommittal response that he would like to

6   share information about the search, but could not do so at this time.

7       Undersigned counsel filed an emergency motion for a hearing with this court

8   regarding this issue.  By the time undersigned counsel contacted AUSA Smoot, he

9   had already reviewed three of the documents provided to him by FBI agents.  AUSA

10   Smoot advised SA McEuen to obtain reports from the FBI agent and Deputy

11   Marshal who performed the search of the cell, and requested that SA McEuen seal

12   the three documents reviewed by Mr. Smoot in one envelope, and the remaining

13   documents not yet reviewed in a second envelope.

14       At the time of the search of Mr. Brice's cell, both Deputy Shafer and the

15   Government were aware of the potential for conflict further involvement by Deputy

16   Marshal Shafer would cause.  Although the United States Attorney's Office had

17   attempted to "wall off" AUSA Smoot from the conflict issue raised by Deputy

18   Shafer's communication with Mr. Brice in November 2011, then-First Assistant

19   United States Attorney Thomas Rice had been involved with discussions with the

20   Federal Defenders about this issue.  Then-Criminal Chief AUSA Joseph Harrington

21   had both written and telephonic contact with undersigned counsel regarding the

22   issue.

23

24

MOTION TO DISMISS

1      The parties litigated, first in this Court, issues surrounding the privileged

2  nature of the written materials seized from Mr. Brice's cell.  From the outset,

3  undersigned counsel argued that there was no privilege, rule or case law which

4  prevented a copy of the materials seized from being delivered to undersigned

5  counsel, in order to allow for adequate briefing as to any privileged documents.

6  Ultimately, the Court reviewed the documents *in camera*, and determined that they

7  were not privileged.

8      Mr. Brice filed an interlocutory appeal/petition for writ of mandamus to the

9  Ninth Circuit.  Mr. Brice renewed his arguments, and explicitly argued that copies of

10 the documents should be delivered to undersigned counsel so that counsel could

11 adequately brief the issue of privilege.  Once again, counsel's arguments fell on deaf

12 ears.  The Ninth Circuit, after reviewing the documents *in camera*, denied the

13 appeal/petition.

14     Based on the Ninth Circuit's mandate, this Court ordered that the documents

15 be released to the Government, and released to undersigned counsel under a strict

16 protective order.  The documents were finally delivered to undersigned counsel on

17 March 22, 2013, ten months after counsel first requested them.  The documents were

18 received by counsel's office late in the day on Friday, March 22nd.

19     The draft presentence investigation report ("PSR") was disclosed to the parties

20 on Monday, March 25, 2013.  The author of the PSR states that "1.5 days were spent

21 with the case agent looking at evidence and exhibits pertaining to this case."  (PSR

22 at p. 7, ¶15).  The seized materials are prominently featured in the PSR.  (PSR at 40-

23

24

MOTION TO DISMISS

6

45).  Included in that section of the PSR is material which was seized, read and disclosed in violation of the Sixth Amendment, the attorney-client privilege and/or the work-product privilege.

## II.   Mr. Brice's Sixth Amendment right to counsel was violated when Deputy Shafer and Intelligence Analyst Pulcastro searched Mr. Brice's jail cell and reviewed materials protected by the attorney-client privilege

There are, in effect, two separate violations of the Sixth Amendment, and the attorney-client and work product privileges.  The first occurred on May 18, 2012, when Deputy Shafer and Analyst Pulcastro searched through *all* of Mr. Brice's written materials, and separated them into two categories – privileged and non-privileged.  In order to create the privileged category, by the Government's own admission, it reviewed privileged materials.

The second violation occurred when the privileged materials were included in the non-privileged category of materials.  Those materials have been reviewed by SA McEuen, the case agent.  They have been disclosed to the Probation Officer and author of the PSR.  They have been provided to AUSA Smoot.[5]  The bell has tolled

---

[5]

Undersigned counsel is not clear whether AUSA Smoot has reviewed every document in the 337 pages or not.  Counsel welcomes clarification from the Government on that issue.  Because the case agent has reviewed all of the documents, and disclosed them to the PSR author, this would nevertheless be a distinction without

MOTION TO DISMISS

1   loudly, and cannot be unrung.

2

3
4

      **A.**    **The search of the jail cell itself violated the Sixth Amendment and the attorney-client and work-product privileges**

5        The Sixth Amendment provides that "[in] all criminal prosecutions, the

6   accused shall enjoy the right ... to have the Assistance of Counsel for his defense."

7   U.S. Const., amend. VI. Additionally, the Sixth Amendment is meant to assure

8   fairness in the adversary criminal process. *United States v. Cronic*, 466 U.S. 648,

9   656, 104 S.Ct. 2039 (1984).  Where the Sixth Amendment is violated, "a serious risk

10  of injustice infects the trial itself." *United States v. Danielson*, 325 F.3d 1954, 1066

11  (9th Cir. 2003) (quoting *Cronic* 466 U.S. at 656). This right is implicated when the

12  government interferes with the confidential relationship between a criminal

13  defendant and his counsel. *Weatherford v. Bursey*, 429 U.S. 545, 554-58, 97 S.Ct.

14  837, 843-45 (1977).

15       The Ninth Circuit has adopted a two-step analysis to determine prejudice: first

16  the government must have acted affirmatively to intrude into the attorney-client

17  relationship and thereby to obtain privileged information, and second, once this

18  *prima facie* case has been established the burden shifts to the government to show

19  that there has been no prejudice to the defendant. *See id.* at 1071. Prejudice can be

20

21  _____

22  a difference, particularly in light of the fact that at least one attorney in the United States

23  Attorney's Office has reviewed all of the documents.

24  MOTION TO DISMISS

1   established from 1. Privileged information being introduced at trial; 2. The

2   prosecution obtaining the defense plans or strategy; 3. The governmental intrusion

3   destroys the defendant's confidence in his attorney; or 4. The Government otherwise

4   gains an unfair advantage at trial. *See Danielson* at 1069.

5        Here, Deputy Shafer and Intelligence Analyst Pulcastro acted affirmatively to

6   intrude into the attorney client relationship by reviewing materials for the purpose of

7   evaluating their level of privilege. In doing so, both obtained privileged information

8   that can be utilized by the prosecution. Because the Government failed to use a

9   neutral party (such as a special master) to review the privileged materials found in

10  Mr. Brice's cell, and instead used individuals who are part of the prosecutorial team,

11  Mr. Brice's Sixth Amendment right has been violated and he has been prejudiced by

12  the violation.

13       In *United States v. Blanco,* 392 F.3d 382 (9th Cir. 2004)*,* in a different context,

14  the Court recognized that investigative teams are inherently part of the prosecutorial

15  team.  "Exculpatory evidence cannot be kept out of the hand of the defense just

16  because the prosecution does not have it, where an investigating agency does." *Id.* at

17  388; *see also United States v. Monroe,* 943 F.2d 1007, 1011 (9th Cir. 1991) (stating

18  that "the prosecution must disclose any [*Brady*] information within the possession or

19  control of law enforcement personnel") ( quoting *United States v. Hsieh Hui Mei*

20  *Chen*, 754 F.2d 817, 824 (9th Cir. 1985)). "Once the investigatory arm of the

21  government has obtained information, that information may reasonably be assumed

22  to have been passed on to other governmental organizations responsible for

23

24

MOTION TO DISMISS

1    prosecution." *United States v. Renzi*, 722 F.Supp.2d 1100 (D. Ariz. 2010).

2    Here, the Government has attempted to make a case that Deputy Shafer and

3    Intelligence Analyst Pulcastro are not part of the Government team.  Under the

4    precedent cited above, this argument is legally unpersuasive.  Under the facts of the

5    case, however, the argument is factually inaccurate.  As has already been presented

6    to the Court, Deputy Shafer was involved in the execution of search warrants in this

7    case.  Intelligence Analyst Pulcastro was also involved in the coordination of efforts

8    in conducting searches.  He also participated in review of reports and organization in

9    this case.  Both are members of the Government team as a factual matter.

10    To eliminate part of the risk that the prosecution team will obtain privileged

11    documents or communications, the Government may choose to use a neutral party to

12    review the material. The use of a neutral party to assess privileged information is a

13    commonly used tactic to avoid intruding into the attorney client privilege, and the

14    use of such a tactic has not been found to violate the Sixth Amendment.  *See United*

15    *States v. SDI Future Health, Inc.*, 464 F.Supp.2d 1027 (Nev. 2006) (discussing the

16    use of "taint teams" to minimize the transcendence of  privileged information to the

17    prosecution); *see also Renzi*, 722 F.Supp.2d 1100 (Holding that because the taint

18    team failed to filter out privileged materials that were then obtained by the

19    prosecution, all evidence obtained in the wire tap should be suppressed). However,

20    where the government "chooses to take matters into its own hands rather than use

21    more traditional alternatives ... it bears the burden to rebut the presumption that

22    tainted material was not provided to the prosecution team." *Id.*

23

24

MOTION TO DISMISS

10

1    Here, unlike in *SDI Health Services* where the Government used a taint team

2    to protect privileged materials, the Government took matters into its own hands

3    when it utilized Deputy Shafer as a firewall.  The use of Deputy Shafer shows that

4    the Government failed to use a neutral party or other more traditional methods to

5    protect the attorney client privilege.  Moreover, there has been no showing that

6    either Deputy Shafer or Intelligence Analyst Pulcastro was qualified to make the

7    determination of what materials were privileged.  There has been no showing that

8    either went to law school, passed the bar exam, or would be otherwise qualified to

9    make a judicial determination.  It appears that both were playing the role of law

10   enforcement investigators, and not serving in any sort of independent, quasi-judicial

11   capacity.

12   Deputy Shafer and Intelligence Analyst Pulcastro now have personal working

13   knowledge of privileged documents, some of which include Mr. Brice's trial

14   strategy.  That knowledge has presumptively been shared with counsel for the

15   Government.  In light of their connection with the case, the Government attempted

16   to cover up their knowledge of the conflict by portraying these law enforcement

17   agents as neutral parties.  Because of the valuable information that the prosecutorial

18   team has obtained through this breach of the attorney client privilege, the Sixth

19   Amendment has been violated and any trial that Mr. Brice has will be inherently

20   unfair.

21   Exacerbating this situation is the prior role played by Deputy Shafer in this

22   case.  He has previously been involved in matters which raised the specter of a

23

24   MOTION TO DISMISS

11

1   conflict of interest.  Since he was specifically interviewed as part of the investigation

2   of those matters, he was undoubtedly aware of the danger his involvement could

3   cause.  Deputy Shafer was aware of the conflict he created by reviewing the

4   materials because of his involvement with the investigation of the case and as a

5   member of the prosecution team.  Thus, it was additionally incumbent upon the

6   Government to avoid his further entanglement with this case.  Rather than avoid

7   such entanglement, it appears that the Government sought to immerse him deeper

8   into the case.

9

10        **B.        The search of the jail cell itself violated the the attorney-client and
                       work-product privileges**

11

12        The attorney-client privilege has been broadly construed to protect clients'

13  secrets and confidences from outside discovery and disclosure. The Supreme Court

14  has made it clear that the work-product doctrine protects against discovery of

15  attorneys' work product, *see e.g. Hickman v. Taylor,* 329 U.S. 495 (1947), in both

16  civil and in criminal cases.  *United States v. Nobles,* 422 U.S. 255 (1975).

17        The attorney-client privilege protects confidential communications disclosed

18  by a client to an attorney in order to obtain professional legal service.  *In re Grand

19  Jury Proceedings*, 13 F.3d 1293, 1296 (9th Cir. 1994).  In *United States v. Kovel*,

20  296 F.2d 918, 921 (2nd Cir. 1961), the court explained the policy underlying the

21  attorney client privilege:

22            [B]y reason of the complexity and difficulty of our law, litigation can only be
              properly conducted by professional men, it is absolutely necessary that a man .
23            . . should have recourse to the assistance of professional lawyers, and . . . it is

24

equally necessary . . . that he should be able to place unrestricted and unbounded confidence in the professional agent, and that the communications he so makes to him should be kept secret. . . .

Federal Rule of Criminal Procedures 16(b)(2) was modified in 1975 and specifically "set forth 'work product' exceptions to the general discovery requirement."  The Advisory Committee Notes to the 1975 Enactment of Rule 16 state:

> [Rule 16] does not authorize the discovery or inspection of reports, memoranda, or other internal defense documents made by the defendant, or the defendant's attorneys or agents in connection with the investigation or defense of the case, or of statements made by the defendant, or by government or defense witnesses, or by perspective government or defense witnesses, to the defendant, the defendant's agents or attorneys.

Federal Rule of Criminal Procedure 26.2 also excludes investigator's notes from discovery.  Work product consists of the tangible and intangible material which reflects an attorney's efforts at investigating and preparing a case, including one's pattern of investigation, assembling of information, determination of the relevant facts, preparation of legal theories, planning of strategy and recording of mental impressions.  *In Re Grand Jury Subpoena Dated November 8, 1979*, 622 F.2d 933 (6th Cir. 1980).  "The privilege creates a zone of privacy in which an attorney can investigate, prepare and analyze the case." *Id.*

It is well established that the attorney client relationship functions at the heart of the American system of justice:

> It is undeniable that the sanctity of the attorney-client relationship is one of the cornerstones of our adversary system. As the Supreme Court stressed in *Upjohn Co. v. United States*:
> > The attorney-client privilege is the oldest of the privileges for confidential communications known to the common law. . . It's purpose

MOTION TO DISMISS

1    is to encourage full and frank communication between attorneys and
2    their clients and thereby promote broader public interests in the
     observance of law and administration of justice.

3  *United States v. Hernandez*, 937 F.2d 1490, 1493 (9th Cir. 1991).

4        The attorney client privilege extends to communications to, or in the presence

5  of, third parties who are agents of the client's attorney. *Kovel*, 296 F.2d at 922.  It is

6  not required that the lawyer be present when the communication is made. *See Grand*

7  *Jury Proceedings Under Seal v. United States*, 947 F.2d 1188 (4th Cir. 1991).  The

8  Ninth Circuit follows the *Kovel* formula for extending the attorney client privilege to

9  third party agents of the attorney.  *United States v. Gurtner*, 474 F.2d 297 (9th Cir.

10  1973).

11

12  **C.    The search of the jail cell itself constitutes outrageous government
         conduct**

13

14       The Ninth Circuit has recognized that dismissal is appropriate in light of

15  "outrageous government conduct," *see United States v. Garza-Juarez*, 992 F.2d 896,

    904 (9th Cir.1993) ("[T]he government's conduct may warrant a dismissal of the
16
    indictment if that conduct is so excessive, flagrant, scandalous, intolerable and
17
    offensive as to violate due process.")
18
         In *United States v. Levy*, 577 F.2d 200 (3rd Cir. 1978), a codefendant who was
19
    a government informant participated in attorney-client conferences and disclosed
20
    defense strategy to the government. The *Levy* court dismissed the indictment. In
21
    doing so, the Court discussed the difficulty in measuring prejudice where the
22
    attorney client relationship is invaded by the government, as opposed to fourth
23

24  MOTION TO DISMISS

amendment "fruit of the poisonous tree" analysis:

> [T]he interests at stake in the attorney client relationship are unlike the expectations of privacy that underlie the fourth amendment exclusionary rule. . . . The purpose of the attorney client privilege is inextricably linked to the very integrity and accuracy of the fact finding process.

577 F.2d at 209.  The *Levy* court identified the inherent defect in attempting to isolate prejudice when the government has participated in attorney-client communications:

> [I]t is highly unlikely that a court can . . . arrive at a certain conclusion as to how the government's knowledge of any part of the defense strategy might benefit the government in its further investigation of the case, in the subtle process of pretrial discussion with potential witnesses, in the selection of jurors, or in the dynamics of trial itself.

577 F.2d at 208.

In *United States v. Mastroianni*, 749 F.2d 900 (1st Cir. 1984), the First Circuit echoed the *Levy* court's analysis:

> We believe that placing the entire burden on the defendant to prove both the disclosure and use of confidential information is unreasonable:
>> "It would be virtually impossible for an appellant or a court to sort out how any particular piece of information in the possession of the prosecution was consciously or subconsciously factored into each of those decisions. . . ."

749 F.2d at 907 (citations omitted).  The *Mastroianni* court stated the burden is on the government to show the absence of prejudice once the defendant establishes that privileged information has been given to the government:

> The burden on the government is high because to require anything less would be to condone intrusions into a defendant's protected attorney-client communications. The advantage that the government gains in the first instance by insinuating itself into the midst of the defense meeting must not be abused.

> Other courts have underscored the inadequacy of the retrial remedy where the

MOTION TO DISMISS

attorney-client relationship is invaded:

> We do not think . . . that the granting of a new trial is an adequate remedy for the deprivation of the right to counsel where eavesdropping has occurred. . . . There is no way to isolate the prejudice resulting from an eaves-dropping activity, such as this. If the prosecution gained information which aided it in the preparation of its case, that information would be as available in the second trial as in the first. If the defendant's right to private consultation has been interfered with once, that interference is as applicable to a second trial as to the first. And if the investigating officers and the prosecution know that the most severe consequence which can follow from their violation of one of the most valuable rights of a defendant, is that they will have to try the case twice, it can hardly be supposed that they will be seriously deterred from indulging in this very simple and convenient method of obtaining evidence and knowledge of the defendant's strategy.

*United States v. Orman*, 417 F.Supp. 1126, 1137 (D.Col. 1976) (Indictment dismissed where DEA agents eavesdropped on attorney client conferences and learned defense strategies) (*quoting State v. Cory*, 62 Wn.2d 371, 382 P.2d 1019 (1963) (Charges dismissed where sheriff eavesdropped on attorney-client conversations at jail)).

   **B.    The government has both used and disclosed to the PSR author materials seized in violation of the Sixth Amendment and the attorney-client and work-product privileges**

As noted above, the government, via case agent SA McEuen, spent 1.5 days reviewing evidence with the United States Probation Officer who drafted the PSR. Much of the evidence supplied by the Government has been incorporated and reproduced in the PSR. Included in the information provided to the Probation Officer, and included in the PSR, is material protected by the Sixth Amendment and the attorney-client and work-product privileges.

Disclosing the privileged material in a pleading available to the public would amount to an additional violation of Mr. Brice's constitutional rights and privileges. Moreover, Mr. Brice should not be compelled to disclose to the Government the full nature of the communications between attorney and client which led up to the production of information which the Government has wrongfully seized and disseminated.  Therefore, Mr. Brice is prepared at the time of hearing to explain to the Court, *ex parte*, the precise nature of the privileged materials which have been disclosed.

**III.    Mr. Brice is entitled to Dismissal of the Indictment Against Him.**

A violation of the Sixth Amendment Right to counsel is legal grounds for dismissal of the indictment against the defendant prejudiced. *See SDI Future Health* 464 F.Supp.2d at 1047.  The Government, through members of the prosecutorial team, has now reviewed, on multiple occasions, privileged material. Possession of the defendant's strategy by the prosecution not only substantially prejudices Mr. Brice, but makes fair proceedings unattainable.  In light of this series of Sixth Amendment and privilege violations, the indictment should be dismissed.

A court may dismiss an indictment when outrageous government conduct in conducting a criminal investigation deprives a defendant of due process under the Fifth Amendment.  *United States v. Russell*, 411 U.S. 423, 431-32 (1973). Outrageous conduct is that which "is fundamentally unfair and shocking to the universal sense of justice mandated by the Due Process Clause of the Fifth

1 Amendment." *United States v. Ofshe*, 817 F.2d 1508, 1516 (11th Cir. 1987)

2 (citations omitted);  *accord. United States v. Garza-Juarez*, 992 F.2d 896 (9th Cir.

3 1993). Governmental subversion of an individual's relationship with his attorney

4 may constitute outrageous conduct.  *Marshank*, 777 F. Supp. at 1523;  *see Ofshe,*

5 *supra*, 817 F.2d at 1516.

6

7 **IV.    In the alternative, other sanctions are appropriate**

8        **A.    All evidence obtained from Mr. Brice's jail cell should be
              suppressed because it was obtained in violation of the Sixth**
9              **Amendment**

10       If the court finds that dismissal of the indictment is not necessary, "[t]he

11 general remedy for a violation of the attorney client privilege is to suppress the

12 introduction of the privileged information at trial." *Id.* at 1047. However, under the

13 fruits of the poisonous tree doctrine, a defendant is entitled to the suppression of

14 derivative evidence obtained from a constitutional violation. *Wong Sung v. United*

15 *States*, 371 U.S. 471, 83 S.Ct. 407 (1963).  It may be argued that the attorney client

16 privilege is an evidentiary privilege, not a constitutional right. However, when a

17 defendant is prejudiced because of the violation of the attorney client privilege, his

18 Sixth Amendment right to counsel is implicated, turning it into a constitutional

19 violation. *Weatherford,* 429 U.S. at 554-58, 97 S.Ct. at 843-45.

20       As established previously, Mr. Brice has been prejudiced by the

21 Government's intrusion into the attorney client privilege between Mr. Brice and

22 undersigned counsel.  Because of this Sixth Amendment violation of the attorney

23

24

1    client privilege, the fruits of the poisonous tree doctrine applies and all evidence

2    obtained in the cell search should be suppressed.

3

4    **B.    The United States Attorney's Office for the Eastern District of Washington should be removed from the case**

5

6    A bell cannot be unrung.  The United States Attorney's Office for the Eastern

     District of Washington has wrongfully learned information about strategy and other
7
     privileged information which it was not entitled to learn.  Should the Court find that
8
     dismissal is not warranted, removing that office as counsel for the Government is
9
     necessary, in order to remove the taint caused by the violation of privilege described
10
     herein.  Any evidence seized and information learned from the search of Mr. Brice's
11
     cell should not be disclosed to the prosecutor then appointed to represent the
12
     Government.
13

14   **C.    The United States Probation Office for the Eastern District of Washington should be removed from the case**
15

16   A bell cannot be unrung.  The United States Probation Office for the Eastern

17   District of Washington has, through no fault of its own, wrongfully learned

18   information about strategy and other privileged information which it was not entitled

19   to learn.  Should the Court find that dismissal is not warranted, striking the PSR and

20   removing that office from responsibilities in this matter, in order to remove the taint

21   caused by the violation of rights and privileges as described herein, is necessary.

22   Any evidence seized and information learned from the search of Mr. Brice's cell

23

24   MOTION TO DISMISS

1    should not be disclosed to the Probation Office then appointed to represent the

2    Government.

3

4    **D.    This Court should recuse itself from sentencing**

5    Pursuant to 28 U.S.C. § 455(a), "[a]ny . . . judge . . . shall disqualify himself in

6    any proceeding in which his impartiality might reasonably be questioned."  The

7    substantive standard is "[W]hether a reasonable person with knowledge of all the

8    facts would conclude that the judge's impartiality might reasonably be questioned."

9    *United States v. Hernandez,* 109 F.3d 1450, 1453 (9th Cir. 1997) (internal quotation

10   marks and citations omitted).

11   The Supreme Court has held that judicial rulings or information acquired by

12   the court in its judicial capacity will rarely support recusal.  *Id.* at 555.  The Court

13   explained that if information is acquired during court proceedings, only

14   exceptionally inflammatory information will provide grounds for recusal based on

15   bias or prejudice.  *Id.*  Extrajudicial information involving "something other than

16   rulings, opinions formed or statements made by the judge during the course of trial"

17   may warrant recusal.  *United States v. Holland,* 519 F.3d 909, 914 (9th Cir.2008).

18   Because additional briefing on this subject would constitute another violation

19   of Mr. Brice's constitutional rights and privileges, Mr. Brice is prepared at the time

20   of hearing to explain to the Court, *ex parte*, the precise nature of the privileged

21   materials which have been disclosed and the prejudice caused thereby.

22   **V.    Conclusion**

23

24

MOTION TO DISMISS

1    For the reasons expressed herein, Mr. Brice respectfully requests:

2    1.    that this case be dismissed with prejudice.

3    Alternatively, Mr. Brice requests:

4    2.    that any evidence seized be suppressed;

5    3.    that the United States Attorney's Office for the Eastern District of

6    Washington be removed from this case;

7    4.    that the PSR be stricken and the United States Probation Office for the

8    Eastern District of Washington be removed from the case; and

9    5.    that this Court recuse itself, as discussed herein.

10    Alternatively, Mr. Brice requests:

11    6.    that an evidentiary hearing be held regarding these issues, at which the

12    individuals involved in the search of Mr. Brice's cell can be called to

13    testify regarding the circumstances of that search; and

14    7.    that an *ex parte* hearing be held in order to fully address the scope of

15    the violations discussed herein without violating the Mr. Brice's rights

16    and privileges anew.

17

18    Dated:  April 22, 2013

Respectfully Submitted,

19

20    s/ Matthew Campbell
WA 38696

21    Attorneys for BRICE
Federal Defenders of

22    Eastern Washington and Idaho
10 North Post, Suite 700

23

24    MOTION TO DISMISS

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

Spokane, Washington 99201
Telephone: (509) 624-7606
Fax: (509) 747-3539
Email: Matt_Campbell@fd.org

**CERTIFICATE OF SERVICE**

I hereby certify that on April 22, 2013, I electronically filed the foregoing

with the Clerk of the Court using the CM/ECF System which will send notification

of such filing to the following: Russell E. Smoot, Assistant United States Attorney.

s/ Matthew Campbell
WA 38696
Attorneys for BRICE
Federal Defenders of
Eastern Washington and Idaho
10 North Post, Suite 700
Spokane, Washington 99201
Telephone: (509) 624-7606
Fax: (509) 747-3539
Email: Matt_Campbell@fd.org

MOTION TO DISMISS